Isaac Atwater *et al. vs.* Anna S. Russell *et al.*

Argued Jan. 27, 1892.    Decided March 11, 1892.

(Will Case.)

**Construction of a Will.**—A certain will and codicil construed, and *held,* that it was the intention of the testator, by the codicil, to substitute to the residuary bequest in the will, in lieu of the legatee mentioned in it, a new beneficiary brought in by the codicil, although that instrument made no express reference to the residuary clause in the will.

**Suspension of the Power of Alienation.**—A devise of real estate to executors, in trust to sell as soon as in their judgment the same can be sold for a reasonable price, does not suspend the power of alienation.

**Construction of Codicil.**—Other questions of no general importance, raised upon the construction of a will and codicil, determined.

Appeal by defendants Anna S. Russell, Walter S. Martin, and Margaret G. Brown from an order of the District Court of Hennepin County, *Hicks,* J., made September 29, 1891, refusing a new trial.

Richard Martin made his will September 24, A. D. 1883. He made a codicil October 1, 1888. He died January 15, 1890. The will and codicil were filed in the Probate Court at Minneapolis, and on July 19, 1890, they were admitted to probate and record in that court as his last will and testament. The plaintiffs were named in it executors and trustees. They accepted, qualified, and entered upon the discharge of their duties. Deceased left him surviving the defendants Anna S. Russell, his sister, residing at Savannah, Ga., Walter S. Martin, his brother, residing at Red Hook, N. Y., and Margaret G. Brown, his half-sister, residing at Rocky Hill, Conn. These were his only heirs at law and next of kin. He left no father, mother, wife, or child. He was never married. His sister, Mrs. Russell, had three children; his brother, two; and his half-sister, two. His brother, Walter S., was bankrupt, and had been for a number of years. Deceased was a small, intelligent, but deformed man. He was humpbacked from infancy, and in 1859 he lost a leg. He was left an orphan, without means, when a small child, and had

been in poor health nearly all his life. He earned some money keeping books in New York City, and saved it. In 1854 he came to Minneapolis, and engaged in loaning money for his eastern acquaintances, and dealing in real estate. He continued in this business until 1882, when he retired, and went to Red Hook, N. Y., to reside, at which place he was born, and where he lived when a child. He died in Florida, whither he had gone for his health.

He was a communicant of the Protestant Episcopal Church, and took much interest in its attendant charities. The memory of his orphan life, and the amputation of his leg, led him, in the later part of his life, to take an active interest in an Orphanage, and in St. Barnabas Hospital. Of this hospital he was one of the twelve trustees. It was organized as a corporation on August 28, 1883. It has no capital stock. Its purpose is to relieve the sick and wounded by providing a place for their care, with medical attendance, food, and clothing. It is located in Minneapolis. The Bishop of the Protestant Episcopal Church of the diocese, and all the Rectors of churches of that religious body within the city, are *ex officio* members of the corporation.

The Sheltering Arms is another corporation located at Minneapolis. It was organized and incorporated December 11, 1883, by ladies of the Protestant Episcopal churches of that city. Its purpose is to protect, educate, and provide homes for such orphan and destitute children as may be committed to its care, and for that purpose to erect and maintain an Orphanage and Asylum. It has no capital stock. Its affairs are managed by a board of fifteen directors elected each year on the Festival of the Holy Innocents.

Richard Martin, when he made his will, September 24, 1883, owned the two tracts of land described in it. He also owned a house and lot in Red Hook, N. Y., and about $75,000 in notes secured by mortgages in Minnesota, and about $20,000 in bonds and other securities. The Keegan farm at Highland Lake contained 180 acres, then worth $250 per acre. The other, or River farm, contained 135 acres, and was then worth $400 per acre. On October 1, 1888, the value of the Keegan farm had increased to double its former value, and on that day Mr. Martin made a deed of it in fee simple to Isaac At-

water, Wm. W. Folwell, of Minneapolis, and his uncle, Edward Martin, of Dutchess County, N. Y., and their successors, in trust, to take possession of it, receive the rents and profits, pay the taxes, and as soon as it could be sold for a reasonable price, and within ten years, to sell and convey it in fee simple, and appropriate the proceeds to endow St. Barnabas Hospital, provided the grantees should then be satisfied that the Protestant Episcopal churches of the city would permanently and efficiently support and sustain it as a church hospital. If not so satisfied, then the grantees were to pay over the proceeds to St. Luke's Hospital of the Episcopal Church in the city of New York. A copy of this deed is set out in the next case, *post*, p. 59.

Isaac Atwater and Edward Martin, trustees and executors of the last will and testament of Richard Martin, deceased, brought this action against Anna S. Russell, Walter S. Martin, and Margaret G. Brown, his heirs at law, and next of kin, and against St. Barnabas Hospital and The Sheltering Arms, to obtain a construction of the will, and have the court adjudge whether the title to the River farm vested in plaintiffs upon the trusts set out in the codicil to the will, and whether those trusts are valid, and The Sheltering Arms entitled to the proceeds of the sale of the land, and whether it is entitled to one half of the residuary estate mentioned in the eleventh or residuary clause of the will, and whether the $30,000 mentioned in the codicil is to be held upon the trusts expressed in the second clause in the will.

The defendants all answered, and also prayed judgment construing the will. The Sheltering Arms claimed the proceeds of the sale of the River farm when sold, and one half of the residuary estate. St. Barnabas Hospital claimed the other half of the residuary estate. The heirs at law claimed the $30,000 mentioned in the codicil was a gift absolute, to be paid over to them at once, and that Mr. Martin died intestate as to the River farm, and as to the residuary estate. The action was tried April 30, 1891. The District Court filed its findings of fact and conclusions of law September 11, 1891, holding that the $30,000 given the brother and sister by the codicil was given in trust as stated in the second clause of the will, that all the

estate was disposed of by the will, and sustaining the claims of The Sheltering Arms and St. Barnabas Hospital.

The brother and sisters moved for a new trial, serving their notice of motion upon the plaintiffs, and also on the two corporations defendants. The motion was denied September 29, 1891, and they appealed the same day to this court. The Sheltering Arms and St. Barnabas Hospital, being satisfied with the decision of the District Court, were made respondents with the plaintiffs. Richard Martin's will and codicil were as follows, viz.:

### WILL.

IN THE NAME OF GOD, AMEN: I, Richard Martin, now a resident of the town of Red Hook, Dutchess County, New York, being in the comfortable enjoyment of bodily health, of sound mind and in the possession of all my mental faculties, do declare, after mature thought and careful consideration, this to be my last Will and Testament, hereby revoking all other wills made prior to the date of this:

I appoint my uncle, Edward Martin, of Red Hook, Dutchess County, New York, and Isaac Atwater, of Minneapolis, Minnesota, the executors of this, my last will and trustees of the trusts herein created. In case of the death or inability to act of either of said persons before my own death, or before the full execution of this will, I appoint John B. Atwater of Minneapolis, Minnesota, executor and trustee in his place.

First: I direct my executors to pay my just debts and funeral expenses, and procure and set up a suitable tombstone to mark the place where my body reposes.

Second: I direct my executors to invest and keep invested the sum of twenty-one thousand dollars ($21,000), and the annual proceeds or interest thereof to pay over in quarterly payments to my sister, Anna S. Russell, now a resident of the City of Savannah, State of Georgia, during her lifetime, and to my brother, Walter S. Martin, now a resident of Red Hook, Dutchess county, New York, during his lifetime, in the proportion of eight (8) parts to my said sister and six (6) parts to my said brother. It is my design through

this bequest to make provision for the support of my said sister, and also to make provision for the support of my said brother and his family, and for the purpose of carrying out said design, it is my will that, in case creditors' bills shall be filed or any proceedings instituted against my said brother for the purpose of reaching the interest or income so provided for him and diverting it from the object intended by me, and a decree of judgment is therein obtained for that purpose, then from that period the said interest or income to my said brother shall cease, and I direct my said executors in trust from thenceforth to expend the said interest or income for the support of the family of my said brother, either by paying the same to his wife, or in any other practicable way in their discretion. On the death of either my said brother or sister, I direct my executors to keep invested for the benefit of the survivor of them such part of said sum of twenty-one thousand dollars ($21,000) as that the annual proceeds thereof shall equal the amount which such survivor has theretofore annually received, and the remainder of said sum of twenty-one thousand dollars ($21,000) is to be divided among the persons hereinafter named in the manner following to-wit: One sixth part thereof to each of the following persons, to-wit: Elizabeth S. Gustin, Margaret Isabelle Lester, and Levietta S. Alden, daughters of my said sister Anna S. Russell, Margaret Elizabeth Stevens and Richard Martin, daughter and son of my brother Walter S. Martin; and one twelfth part thereof to each of the following persons, to-wit: Elmer Brown and Myra Brown, children of my half sister Margaret G. Brown. On the death of the said survivor of my said brother and sister, the said remaining portion of such sum of twenty-one thousand dollars ($21,000) is to be divided among the persons above named in the proportions above specified. In case of the death of either my said brother or sister before my own death, the said sum of twenty-one thousand dollars ($21,000) is to be disposed of in the same manner as above specified. In case of the death of either of the above named legatees, among whom said sum is ultimately to be divided, before the time of the division of any part of said sum, then the portion thereof so coming to any such deceased legatee shall fall into the residue of my estate.

Third: I give to my said brother, Walter S. Martin, all moneys that he has had from me from time to time to aid him in his business and all debts due me from him at the time of my death.

Fourth: I devise and bequeath to my said brother, Walter S. Martin, and his wife, Mary Ann Martin, the house and lot on which they now reside in the village of Red Hook, Dutchess county, New York, as a residence for them during their lifetime and the lifetime of each of them, and after their death, in fee to their daughter, Margaret Elizabeth Stevens, now residing in Kingston, Ulster county, State of New York, or, if she is then dead, to her children and the children then living of Richard Martin, son of the said Walter S. Martin, in undivided shares, but said children to take per capita and not per stirpes.

Fifth: I give and bequeath to my half sister, Margaret G. Brown, of Rocky Hill, near the city of Hartford, Connecticut, one thousand dollars ($1,000) as an evidence of my good will to her.

Sixth: I give and devise to my cousin, John G. Martin, now a resident of the city of Poughkeepsie, County of Dutchess, State of New York, the sum of one thousand dollars ($1,000.)

Seventh: I give and bequeath to my uncle, Edward Martin, of Red Hook, Dutchess County, New York, the sum of five thousand dollars ($5,000,) together with all my wearing apparel, trunks, watch, bed and bedding that I may possess as an additional payment to him for his kindness in loaning me money, the principal and interest of which is now paid, to assist me in commencing business in the state of Minnesota, and, also, in gratitude for the unvarying interest he has always manifested in my welfare.

Eighth: I give and devise to Isaac Atwater, of Minneapolis, Minnesota, the sum of five thousand dollars ($5,000) as a further remuneration for professional services rendered me as my friend and legal advisor during my stay in Minneapolis, Minnesota. In case of his death before my own death, I give and bequeath to each of his children, Isabel Reid, and John B. Atwater, the sum of two thousand dollars ($2,000.)

Ninth: I devise and bequeath to " St. Barnabas Hospital," an institution incorporated or about to be incorporated in the city of

Minneapolis, Hennepin county, Minnesota, the sum of twenty-five thousand dollars ($25,000), and also, those certain tracts of land now owned by me in the town of Minneapolis, Hennepin county, Minnesota, known as lots eight (8), nine (9), and ten (10), in section eight (8), township twenty-eight (28), range twenty-three (23), containing about one hundred and thirty-five (135) acres.

It is my design in this bequest to provide a permanent fund for the support of said institution and the furtherance of its usefulness, and to that end, it is my wish that the land hereby to it bequeathed should not be disposed of until ten (10) years after my death, at which time it will, in my judgment, sell for a sufficient sum to carry out my said purpose, though I do not hereby intend to place any legal limitation or restriction on the sale of said land or to affect the control and disposition of the same any further than the trustees may see fit to defer to my wish here expressed.

Tenth: I devise and bequeath to my trustees hereinbefore named the sum of twenty-five thousand dollars ($25,000), and, also, those certain tracts of land owned by me in the town of Minneapolis, Hennepin county, Minnesota, known as the "Keegan Farm," and being the south-east quarter (S. E. $\frac{1}{4}$) of the north-east quarter (N. E. $\frac{1}{4}$) and the north-east quarter (N. E. $\frac{1}{4}$) of the south-east quarter (S. E. $\frac{1}{4}$) of section nineteen (19), and the south half (S. $\frac{1}{2}$) of the north-west quarter (N. W. $\frac{1}{4}$), and the undivided half of the north-west quarter (N. W. $\frac{1}{4}$) of the south-west quarter (S. W. $\frac{1}{4}$) of section twenty (20), all in township twenty-nine (29), range twenty-four (24) and containing one hundred and eighty (180) acres.

IN TRUST, however, for the following purposes, to-wit: For the establishment of an Orphans' Home in the city of Minneapolis, state of Minnesota, for the care of destitute or orphan children and to train them up to honorable and useful lives, the said institution to be under the control and management of an association or corporation of the members of the different Protestant Episcopal churches in the said city of Minneapolis. The organization of which association or corporation I leave particularly to

my confidential friend, Judge Isaac Atwater, who is more fully advised of my views and wishes in the matter, and who will, if necessary, consult with his co-trustees in regard thereto. In carrying out this object, it is my desire and direction, that, when a corporation shall be formed as above described, which my said executors and trustees shall deem adapted to effectuate my said purpose, they shall turn over to it said property, and therewith a suitable site shall be secured, and the necessary building or buildings erected. Provided, however, that if after paying the aforesaid bequests there shall not be in the judgment of my executors a sufficient sum of money remaining to establish and maintain an Orphans' Home effectually, I desire my executors and trustees to ask the co-operation of the benevolent and charitable to contribute such sums as may be sufficient in their judgment to place it on a permanent basis and enlarge its usefulness according to the true intent hereof. And in case such sum be not contributed, then my executors are authorized and directed to appropriate the money and property hereby appropriated to said Orphans' Home, to the erection of an Asylum for aged and infirm persons in the said city of Minneapolis, under the control and management of the members of the Protestant Episcopal churches of said city on such terms and conditions as may be agreed upon by and between my said executors and the members of said churches. While I desire the control and management of said Home or Asylum to rest with the Protestant Episcopal churches aforesaid, it is not my wish that its benefits should be confined alone to members of the churches herein named, but that all deserving persons should share therein irrespective of their previous religious training. I also express the same wish in regard to the disposition of the land hereby bequeathed, as has been expressed in the ninth bequest of this will. In case my executors should find it impracticable to carry out this bequest with reference to the object first herein specified, to-wit: The Orphans' Home, and should determine to devote the property to an Asylum as above specified, then a corporation shall be formed for that purpose, in the same manner as hereinbefore set forth in

regard to the Orphans' Home, and, in either case, if such an institution as I have above described, should be already in existence at the time of my death in said city of Minneapolis, then my said executors and trustees may in their discretion, convey said money and land to such institution.

Eleventh :   I devise and bequeath to Richard Martin Lester, son of Margaret Isabella Lester, the sum of one thousand dollars ($1,000.)

All the rest and residue of my property at the time of my death of whatsoever nature and wherever situate, I devise and bequeath to my said Executors and Trustees.

In trust, however, to sell and convert the same into money and the proceeds thereof to divide equally between the said St. Barnabas Hospital and the institution which shall take under the tenth bequest of this will.

In case of the death of any legatee mentioned in this will prior to my own death, the legacy herein made to him or her shall fall into the residue of my estate, unless it has been herein otherwise specifically provided.

In case any legatee herein named shall dispute this will or any part hereof, then he or she shall take nothing herein and the bequest or legacy to such person shall be null and void.

In case I should be married at the time of my death, it is my will that my wife should take the provision made by law for her.

In case my estate should be insufficient to pay all the legacies herein made, it is my will that said legacies be paid in the order in which they are herein set down.

In Witness Whereof I have to this the sixth sheet of my will on this twenty-fourth (24th) day of September, A. D. 1883, set my hand and seal and also set my hand to each page of said will.

RICHARD MARTIN, (Seal.)

Signed, sealed, published and declared by the said Richard Martin as and for his last will and testament on this 24th day of September A. D. 1883, in the presence of us, who in his presence

and in the presence of each other and at his request have sub-scribed our names as witnesses hereto. . SVEN OFTEDAL,

Minneapolis, Minn.

SAMUEL HILL,

Residing at Minneapolis, Minn.

CODICIL.

I, Richard Martin of Dutchess county, State of New York, do make, publish and declare this Codicil to my last will, and annex the same thereto.

In consequence of changes in the value of Real Estate in Hennepin county, Minn., since executing my last will of date of September 24th, 1883, and also of the establishment in the city of Minneapolis, of institutions of the same or of similar nature as those which the bequests named in my will were intended to establish or aid, I here-by make the following changes in my said last will, to-wit:

Instead of the bequest of twenty-one thousand dollars mentioned in the second clause of my will, I increase the same to the sum of thirty thousand dollars ($30,000) to be paid to my sister Anna S. Russell, and Walter S. Martin, my brother, in the same proportions as in said will specified, and the bequests to their children, and the chil-dren of Margaret G. Brown, my half sister, to be increased in the same proportion.

· Second:—I hereby declare the Ninth and Tenth clauses of my said will and each and every therein null and void. And in regard to the bequest made in said will to St. Barnabas Hospital, I state that I have made, executed and delivered a certain Trust Deed of date of September ———, appropriating the proceeds of the land mentioned and described in the Tenth (10) clause of my said will to the endow-ment of St. Barnabas Hospital, or of St. Luke's Hospital in the City of New York as my trustees named in said Trust Deed may determine in accordance with the provisions of said Trust Deed. And in re-gard to the lands mentioned in the Ninth clause of my will, to-wit: lots eight (8), nine (9) and ten (10) in Section number eight (8), in Township number twenty-eight (28) of Range twenty-three (23), in Hennepin county, Minnesota, I hereby bequeath the same to my

Executors in my said will named, in trust, however for the following uses and purposes, to-wit:   To enter into and take possession of, rent and manage the—; and collect the rents and profits thereof and to pay taxes thereon, and as soon as in the judgment of my said Executors the same can be sold for a reasonable price, (and not later than ten years after my decease), to sell the same either in a body or in separate portions as to them may see fit, to deduct from the proceeds thereof all taxes paid in excess of rents, and any charges attending the administrating of this Trust, and to pay the balance of the proceeds over to the Sheltering Arms, an institution located in Minneapolis, Minnesota, for the care of poor and needy children.

In witness whereof, I have on this first day of October A. D. 1888, set my hand and seal and also set my hand to each page of this codicil to my will.                         RICHARD MARTIN.   (L. S.)

Signed, sealed, published and declared by the said Richard Martin as and for the codicil to his last Will and Testament on this first day of October, A. D. 1888, in the presence of us, who, in his presence and in the presence of each other and at his request have subscribed our names as witnesses hereto.             JOHN C. RENO,
                                            Minneapolis, Minn.
                                      EDWIN C. GARRIGUES,
                                            Minneapolis, Minn.

*Koon, Whelan & Bennett* and *James W. Lawrence,* for appellants.

The testator died intestate as to one half of the residuary estate under his testamentary papers, and the one half of such estate belongs to his heirs at law.   By the provisions of the will, as modified by the provisions of the codicil, no legatee or legatees, devisee or devisees, or any beneficiary whatever of the one half of the residuary estate is named or in any way designated to take the same, assuming there could be a taking thereof under the will.   The testator, by the second clause of the codicil, declared the tenth clause of his will and each and every thing therein null and void.   He thereby revoked *in toto,* and wiped out that clause and every provision and word contained in it.   Hence the plain and obvious reading of the testamentary papers, taking the words of the testator therein written as they stand,

is that there is "no institution," no beneficiary whatever, "which shall take under the tenth bequest of this will," and between which and the St. Barnabas Hospital the testator's residuary estate can be equally divided, as provided in the residuary clause of the will. The one half of such estate, therefore, is left uncovered, unprovided for by such residuary clause, and must go to the heirs at law of the testator. *Bridges* v. *Strachan*, 8 Ch. Div. 558; *Beauclerk* v. *Mead*, 2 Atk. 167; *Darley* v. *Darley*, 2 Amb. 653; *Darley* v. *Langworthy*, 3 Brown, Parl. Cas. (Tomlins' Ed.) 359; *Southey* v. *Somerville*, 13 Ves. 492; *Hall* v. *Severne*, 9 Sim. 516; *Holder* v. *Howell*, 8 Ves. 97; *Harris* v. *Davis*, 1 Coll. 416; *Henwood* v. *Overend*, 1 Mer. 23; *Bonner* v. *Bonner*, 13 Ves. 379; *Conover* v. *Hoffman*, 1 Bosw. 214; *Hard* v. *Davison*, 53 Hun, 112, and 117 N. Y. 606.

By the provisions in the will the disposition of the one half of the residuary estate is void, and there could be no taking of the same by any beneficiary, even if one were designated to take.

Assuming the tenth clause of the will to stand therein unrevoked, it is and was, *ab initio*, void in law. As to the land described in said clause it is a devise of an estate in real property because the executors and trustees under the will are simply to turn over said land to the proposed corporation; because the charities proposed by the tenth clause failing, there is no conversion since there is no object for it. Being a devise of an estate in real property, it attempts to create a trust which is invalid by the statutes of Minnesota regulating uses and trusts. 1878 G. S. ch. 43, §§ 1, 11. There is no direction given in the tenth clause of the will by the testator to his executors or trustees under his will to sell the land. The only direction therein to them is "to turn over" "said property," to-wit, the money and land described in said clause, to the corporation to be formed.

The intention of the testator throughout the entire tenth clause appears unquestionably to be that the executors or trustees under the will are to hold the land therein described in trust, until a corporation of a certain description is formed, or they form one, or one comes into existence in some way, and then they are to turn over, to convey said land as land, to such corporation. Certainly such a

trust is not within the class of trusts of estates and interests in land permitted by the statute law of this state. 1878 G. S. ch. 43, §§ 1, 11. If this trust is not within the class of trusts permitted by statute it must follow that it is, so far as it relates to real estate, within the class of trusts abolished by statute.

Said tenth clause is repugnant to the statutes of Minnesota prohibiting perpetuities, and is, for that reason, invalid. 1878 G. S. ch. 45, § 14 *et seq.* The trustees were directed by the testator to establish, and then to organize, and then to turn over said property to said corporation. The institution could take nothing upon its incorporation, no title to said property could vest in it until said property should be turned over to the incorporated institution by the trustees. The period of the establishment of this institution, of the formation of this corporation, of the turning over of said property during which period the title to said property is tied up, and the ownership of the same must be necessarily uncertain, is not, by the express words of the will, measured by two lives in being at the death of the testator, but is measured by an indefinite period of time, and is for that reason repugnant to the statute against perpetuities. *Simpson* v. *Cook,* 24 Minn. 180; *Hawley* v. *James,* 16 Wend. 62, 172; *Burrill* v. *Boardman,* 43 N. Y. 254; *Cruikshank* v. *Home for the Friendless,* 113 N. Y. 337.

The claim made that the institution in question could be incorporated under the general law of this state by the executors, in accordance with the direction of the testator, we think cannot avail. Such a claim raises a very doubtful question in any view of the case, and one still unsettled in New York. *People* v. *Simonson,* 126 N. Y. 299. Such a claim in the case at bar would raise a question especially doubtful by reason of the language of the testator in the tenth clause. But the decision of this question is not necessary to demonstrate whether or not a perpetuity here exists. The direction of the testator to his trustees to establish, to organize, and to turn over was a direction to them to act not absolutely but conditionally. The condition upon which the executors are to act in the premises, and to turn over said property to this institution, so to be incorporated, is indefinite in meaning; its performance depends upon the will and

discretion of the executors and trustees. It is a contingency that may never happen. The limitation upon ownership defined by the statute against perpetuities must terminate within the period of two lives in being at the testator's death; it is not enough that it may terminate. *Schettler* v. *Smith,* 41 N. Y. 328. The gift is, therefore, in contravention of the statutes against perpetuities and is void. *Phelps' Ex'r* v. *Pond,* 23 N. Y. 69.

As to the sum of $25,000 described in said clause, it is a bequest of personal property, and being so, the clause attempts to create a trust which is invalid by the statutes regulating uses and trusts. 1878 G. S. ch. 43, §§ 1, 11, 14. Before the amendment of 1875 this statute, although it contained some sections which were broad enough to apply to both real and personal property, was limited to trusts as to real estate, and in almost all sections contained express language indicating such limitations. But Laws 1875, ch. 53, provided that section eleven (11) should be amended by adding thereto the fifth paragraph. As thus amended, it provided that express trusts might be created, not only for the various purposes as to real estate set forth in the first four paragraphs of the section, but also "To receive and take charge of any money, stocks, bonds, or valuable chattels of any kind, and to invest and loan the same for the benefit of the beneficiaries of such express trust." The purposes named in this amendatory act are clearly purposes entirely unlike those sought to be effected by the trust in controversy in this action.

This court held in *Baker* v. *City of St. Paul,* 8 Minn. 491, (Gil. 436,) that chapter forty-three (43) related entirely to uses and trusts of real estate and had no application whatever to uses and trusts of personal property; and that such uses and trusts of personal property remained as at common law. Unless then the legislature, when the act of 1875 was passed, intended to limit or modify the common-law rule as to how express trusts of personal property might thereafter be created and managed, there could have been no purpose or reason for passing the law of 1875. It is well-settled elementary law in the construction of statutes, that the interpretation which renders a statute null and void cannot be admitted; that it is an absurdity to suppose that, after a statute is reduced to terms, it means

nothing. It ought to be interpreted in such a manner that it shall have effect and not be found vain and illusive.

This amendment having been inserted in the original chapter, should be read as though always written therein. If we turn to section fourteen, (14,) a subsequent section of the chapter, we find it stated as follows: "When an express trust is created for any purpose not enumerated in the preceding sections of this chapter, no estate shall vest in the trustee." While section one (1) of the same chapter states: "That uses and trusts except as authorized and modified in this chapter are abolished." *Wood* v. *Wood*, 5 Paige, 596; *Boyce* v. *City of St. Louis*, 29 Barb. 650; *Phelps' Ex'r*, v. *Pond*, 23 N. Y. 69; *Levy* v. *Levy*, 33 N. Y. 97; *Bascom* v. *Albertson*, 34 N. Y. 584; *Knox* v. *Jones*, 47 N. Y. 389; *Despard* v. *Churchill*, 53 N. Y. 192.

This clause in Mr. Martin's will is repugnant to the common-law rule against perpetuities in personal property. This rule prohibits the suspension of the ownership of personal property for any period longer than a life or lives in being at the testator's death, and the term of 21 years more. 1 Schouler, Pers. Prop. § 146; Gray, Perp. § 201 *et seq.;* 1 Jarm. Wills (5th Amer. Ed.) 252.

The limitation upon ownership must be upon life, and must terminate within the period provided by the rule. It is not enough that it *may* terminate. 2 Wash. Real Prop. (4th Ed.) p. 703; 4 Kent, Comm. (13th Ed.) p. *283; *Hawley* v. *James*, 16 Wend. 62, 120; *Schettler* v. *Smith*, 41 N. Y. 328.

By the provisions of the tenth clause the testator's direction to his executors and trustees to establish, to organize, and to "turn over" the property described in said clause was a direction to them to act not absolutely but conditionally. The condition, the contingency, upon which the executors are to act in the premises and to turn over said property to this institution, so to be incorporated, is indefinite in meaning; its performance depends upon the will and discretion of the executors and trustees. It is a contingency that may never happen. The gift, therefore, is in contravention of the common-law rule against perpetuities, and is, for that reason, void. *Phelps' Ex'r* v. *Pond*, 23 N. Y. 69.

The doctrine of charitable uses as to personal property does not

prevail in Minnesota. 1878 G. S. ch. 43, § 1, says, "Uses and trusts except as authorized and modified in this chapter are abolished." In *Little* v. *Willford*, 31 Minn. 173, it is held that such trusts to charitable uses are not recognized in the statute, and that it is expressly declared in the first section of the chapter on uses and trusts, that except as thereby authorized, they are abolished. *Holland* v. *Alcock*, 108 N. Y. 312; *Adams* v. *Perry*, 43 N. Y. 487; *Bascom* v. *Albertson*, 34 N. Y. 584; *Levy* v. *Levy*, 33 N. Y. 97; *Ayres* v. *Methodist Episcopal Church*, 3 Sandf. 351; *Holmes* v. *Mead*, 52 N. Y. 332; *Owens* v. *Missionary Soc. of M. E. Church*, 14 N. Y. 380.

If a foreign trust maker should direct his trustees to sell and convert his land, located here, into personal property, and to hold it for the same trust purpose, the law regulating the suspension of alienation would apply with similar force to the personal property. If the trust would not have been valid with respect to real estate its conversion into personal property cannot save the trust from destruction. *Brewer* v. *Brewer*, 11 Hun, 147, and 72 N. Y. 603; *Hobson* v. *Hale*, 95 N. Y. 589; *Belmont* v. *O'Brien*, 12 N. Y. 394; *Hawley* v. *James*, 16 Wend. 62, 122, and 5 Paige, 317, 445; *In re Brooke*, 3 Ch. Div. 630; *Freke* v. *Carbery*, L. R. 16 Eq. 461.

If the gift contained in said clause were not for other reasons void at law, and if the gift can be said to have any definite object whatever—which is not admitted—it is a gift to an unincorporated association to be formed *in futuro*, or to a corporation not *in esse*, and as such is void. *German Land Ass'n* v. *Scholler*, 10 Minn. 331, (Gil. 260;) *Downing* v. *Marshall*, 23 N. Y. 366; *Sherwood* v. *American Bible Soc.*, *40 N. Y. 561; *Owens* v. *Missionary Soc. of M. E. Church*, 14 N. Y. 380; *Baptist Ass'n* v. *Hart's Ex'rs*, 4 Wheat. 1; *Holmes* v. *Mead*, 52 N. Y. 332; *Bascom* v. *Albertson*, 34 N. Y. 584; *Levy* v. *Levy*, 33 N. Y. 97; *Little* v. *Willford*, 31 Minn. 173.

The beneficiary under this clause is indefinite, uncertain, and cannot be ascertained. 2 Pom. Eq. Jur. §§ 1009, 1025, and notes; 2 Story Eq. Jur. §§ 964, 979; *Power* v. *Cassidy*, 79 N. Y. 602; *Levy* v. *Levy*, 33 N. Y. 97.

No trust can be created or sustained that depends for its execution, for its validity or invalidity, upon the mere exercise of the

will of the executors and trustees. No trust can be created or sustained which depends upon the exercise by the trustees of an election whether they will or will not execute the alleged trust. Discretionary power in the trustees to give or withhold is incompatible with the existence of a valid trust. Where discretion is given by the testator to trustees to give or withhold from the designated object, it is a mere naked authority, from which no trust can be implied, and this discretion cannot be exercised or controlled by the court. It is absolutely essential to the validity of the trust, that the power conferred upon the trustee be so defined and limited by the testator that the courts can either compel its exercise, or, in default of its exercise by the trustee, execute the power by an ordinary decree in equity. *Holland* v. *Alcock,* 108 N. Y. 312; *Tilden* v. *Green,* 130 N. Y. 29; *Maddison* v. *Andrew,* 1 Ves. Sr. 57; *Alexander* v. *Alexander,* 2 Ves. Sr. 640; *Kemp* v. *Kemp,* 5 Ves. Jr. 849; *Keates* v. *Burton,* 14 Ves. Jr. 433; 2 Perry, Trusts, § 510; *Caplin's Will,* 11 Jur. (N. S.) 383; *Prendergast* v. *Prendergast,* 3 H. L. Cas. 195; *Coe's Trust,* 4 Kay & J. 199; *Dillaye* v. *Greenough,* 45 N. Y. 438; *Prichard* v. *Thompson,* 95 N. Y. 76; *O'Hara's Will,* Id. 403.

Assuming that the power is one where the donee has the right to select any and exclude others, of the persons designated as the object of the trust, its validity still depends upon the same principle, and is subject to the same test, to-wit, can it be executed by an ordinary decree in equity at the suit of persons designated as the beneficiaries? The statute of powers presupposes that a power of selection must be so defined in respect of the objects that there are persons who can come into court, and show that they are designated as objects of the trust, and demand the enforcement of the power as authorized by the statute. *Read* v. *Williams,* 125 N. Y. 561; *Tilden* v. *Green,* 130 N. Y. 29; 1878 G. S. ch. 44, § 25.

The trust is undefined, and the manner in which it is to be executed is indefinite, uncertain, and cannot be ascertained. 2 Pom. Eq. Jur. § 1009. Measured by the only rule by which the validity or invalidity of a power in trust can be determined, viz., the ability of a court of equity to execute the power by an ordinary decree, the attempted disposition in the tenth clause is invalid as a

power in trust for the very same reasons which render it invalid as a trust, to-wit, the want of a distinct fund, and of a designated beneficiary entitled to compel the exercise of the power for his benefit, and of certainty as to the manner in which the trust is to be executed. *Tilden* v. *Green,* 130 N. Y. 29, and 54 Hun, 231; *Power* v. *Cassidy,* 79 N. Y. 602; *Prichard* v. *Thompson,* 95 N. Y. 76; *Holland* v. *Alcock,* 108 N. Y. 312.

The tenth clause of the will being void *ab initio,* in law there could have been no taking of the bequest under it, had it not been revoked by the testator. By the residuary clause of his will the testator devised and bequeathed to his executors and trustees the residue of his property in trust to sell and convert the same into money, and the proceeds thereof to divide equally between St. Barnabas Hospital, *"and the institution which shall take under the tenth bequest of this will."* As no party could take under this tenth clause, so the gift of half of the residue failed with it for want of a designated donee.

The testator died intestate as to the whole of the residuary estate under his testamentary papers, and the whole of such estate belongs to his heirs at law. The testator intended the conveyance and appropriation of the land by the deed in trust mentioned in the codicil to be in the place of the bequests, and all the bequests, made in his will to St. Barnabas Hospital.

The particular bequest of $25,000 in the ninth clause of the will, and the particular bequest of $25,000 in the tenth clause of the will, were each revoked by the provisions of the codicil, and, no other disposition of this sum of $50,000 having been made by the testator, it has fallen into, and become a part of, the residuary estate.

The bequest made by the second clause of the will, as the same is modified by the provisions of the codicil, is a gift absolute of $30,000 to defendants Anna S. Russell and Walter S. Martin, to be divided between them in the proportions as in the will and codicil provided, and not a gift to them of the annual proceeds of interest of said sum; said bequest so modified is also a gift absolute of an additional sum of $30,000 to their children, and to the

children of the defendant, Margaret G. Brown, to be divided between them in the proportions stated in the will and codicil.

That part of the second clause of the codicil containing a devise and bequest of the Keegan farm is void at law, and the land belongs to the heirs at law. It is a devise of an estate in real property, and contravenes the statutes limiting the period of suspension of alienation of estates in land, and is for that reason invalid. 1878 G. S. ch. 45, § 14. It depends upon the option of the executors, when they will sell. This option may be exercised at any time within ten years. The executors may sell during the first year, or the tenth year, or at any intermediate time. The time within which the sale must be made is not, by express terms, limited by the lives of two named persons in being at the testator's death. The rule is laid down in the New York cases, and it is the rule prevailing in Minnesota, and the common-law rule, that the utmost limit for which alienation may be suspended must be measured by lives, that there can be only two lives; this is the present rule in New York State but not the common-law rule, that these lives must be designated; that this may be done by naming two persons in particular, or else by describing a class of persons, and bounding the suspension of alienation by the lives of the first two who shall die out of this class. *Hawley* v. *James*, 16 Wend. 62, 172; *Yates* v. *Yates*, 9 Barb. 324, 346, and cases cited.

All limitations by a testator are void, which suspend the power of alienation for a definite or indefinite period measured by years. *Bascom* v. *Albertson*, 34 N. Y. 584, 596; *Simpson* v. *Cook*, 24 Minn. 180.

It is true that by the provisions of the trust, the executors may sell the land at any time before the expiration of ten years. And it is just as true that by the provisions of the trust, the executors may not sell the land at any time before the expiration of ten years. In either case they will satisfy to the letter, the provisions of the trust. 2 Wash. Real Prop. (4th Ed.) 703; 4 Kent, Comm. (13th Ed.) 283; *Simpson* v. *Cook*, 24 Minn. 180; *Bascom* v. *Albertson*, 34 N. Y. 584; *Levy* v. *Levy*, 33 N. Y. 97; *Phelps' Ex'rs* v. *Pond*, 23 N. Y. 69; *Schettler* v. *Smith*, 41 N. Y. 328.

The question is not whether the trust probably will, but whether it can transgress the statutory rule. It must be so limited in point of duration that it cannot in any event exceed two lives, otherwise it is void in its creation. *Hawley* v. *James*, 16 Wend. 62, 120; *Yates* v. *Yates*, 9 Barb. 324; *Gott* v. *Cook*, 7 Paige, 521, 540; *Boynton* v. *Hoyt*, 1 Denio, 53.

This land does not become a part of the testator's residuary estate under his will to be disposed of under the residuary clause therein, but said land goes directly to the heirs at law of the testator. Schouler, Wills, § 545 *et seq.; Kip* v. *Van Cortland*, 7 Hill, 346; 4 Kent, Comm. (13th Ed.) p. *541; 1 Jarm. Wills, (5th Amer. Ed.) 645 *et seq.; Hawley* v. *James*, 5 Paige, 318; *Bogert* v. *Hertell*, 4 Hill, 492; *McCarty* v. *Terry*, 7 Lans. 236; *Smith* v. *Claxton*, 4 Madd. 484; *Betts* v. *Betts*, 4 Abb. New Cas. 317.

If however it should be said that said land does not go directly to the heirs at law of the testator, but becomes a part of his residuary estate under the will, or if to said land the doctrine of equitable conversion should be held to apply so that said land becomes personal property and falls into the testator's residuary estate, then in either case, it belongs in whole or in half part to the testator's heirs at law, as shown in the foregoing argument.

That clause in the will providing that if any legatee named in the will shall dispute said will, or any part thereof, then he or she shall take nothing thereunder, is not valid. Schouler, Wills, § 605; 2 Jarm. Wills, (5th Amer. Ed.).57; *Chew's Appeal*, 45 Pa. St. 228; *Jackson* v. *Westerfield*, 61 How. Pr. 399; *Mallet* v. *Smith*, 6 Rich. Eq. 12; *Powell* v. *Morgan*, 2 Vern. 90; *Morris* v. *Burroughs*, 1 Atk. 398; *Hoit* v. *Hoit*, 42 N. J. Eq. 388.

*Selden Bacon*, for respondent The Sheltering Arms.

The fundamental rule of construction is that the instrument is to be construed as a whole and not in detached portions. *Colt* v. *Colt*, 32 Conn. 442, 446; *Landis* v. *Olds*, 9 Minn. 90, (Gil. 79;) *Pond* v. *Bergh*, 10 Paige, 140; *Hoxie* v. *Hoxie*, 7 Paige, 187; *Hone* v. *Van Schaick*, 3 Barb. Ch. 488; *Westcott* v. *Cady*, 5 John. Ch. 334; *De Kay*

v. *Irving*, 5 Denio, 646; *Du Bois* v. *Ray*, 35 N. Y. 162; *Leavens* v. *Butler*, 8 Port. (Ala.) 380.

Instead of the bequest of $21,000 mentioned in the second clause of the will, the testator, by his codicil, increased it to $30,000. The legatees now claim that by the codicil this sum is not only so increased, but is given them absolutely, and free from any conditions. The language will not admit of this construction.

The respondent's claim is amply sustained by many decisions in substantially similar cases. *Cooper* v. *Day*, 3 Mer. 154; *Fisher* v. *Brierley*, (No. 2,) 30 Beav. 267; *Shaftesbury* v. *Marlborough*, 7 Sim. 237; *Haley* v. *Bannister*, 23 Beav. 336; *Leacroft* v. *Maynard*, 1 Ves. Jr. 279.

None of the cases cited by the appellants as holding a contrary doctrine bear any similarity to the case at bar, and they are expressly, in each case, based on the peculiar facts involved. The language of the codicil, that the testator increases the bequest of $21,000 to $30,-000, indicates clearly the intention that it should be held on the same trusts and managed in the same way as is provided in the second clause of the will, reinforcing materially the presumption under the familiar rule that a codicil disturbs the provisions of the will no further than is requisite to the effectiveness of its own provisions.

The power of alienation is not suspended by the codicil for a longer period than during the continuance of two lives in being at the creation of the estate given the executors in trust for The Sheltering Arms. The rule is settled beyond any peradventure that by law, without any instruction, the trustees are bound to hold the property till they obtain what is in their judgment a reasonable price, and that inserting this provision in the will does not suspend the power of alienation. This has been held over and over again, in cases like the present, and there is no adverse holding. The power of alienation is not suspended by these provisions, and equitable conversion took place at the death of the testator. *Robert* v. *Corning*, 89 N. Y. 225; *Greenland* v. *Waddell*, 116 N. Y. 234; *Henderson* v. *Henderson*, 113 N. Y. 1; *Underwood* v. *Curtis*, 127 N. Y. 523; *In re McGraw*, 111 N. Y. 66, 113; *Lent* v. *Howard*, 89 N. Y. 169; *Stagg* v. *Jackson*, 1 N. Y. 206;

*Graham* v. *Livingston,* 7 Hun, 11; *Robinson* v. *Robinson,* 19 Beav. 494.

Appellants claim that the codicil attempts to create a trust not permitted by our statutes of uses and trusts. Their whole contention on this point is based on Laws 1875, ch. 53. Their claim is, that this act adding one to the list of permissible trusts, abolished all trusts in personalty except the one so specified. To this contention we answer, the act of 1875 abolished no trusts. This particular kind of trust is expressly provided for by 1878 G. S. ch. 43, §§ 11, 12.

Prior to the act of 1875 amending section eleven, (11,) it was held uniformly that the statute of uses and trusts did not relate to trusts in personalty, nor were any trusts in personalty either abolished, prohibited, or regulated thereby. *Baker* v. *Terrell,* 8 Minn. 195, (Gil. 165;) *Dodge* v. *Williams,* 46 Wis. 70; *Penny* v. *Croul,* 76 Mich. 471; *Graff* v. *Bonnett,* 31 N. Y. 9; *Cutting* v. *Cutting,* 86 N. Y. 522; *Gilman* v. *Reddington,* 24 N. Y. 9; *Gilman* v. *McArdle,* 99 N. Y. 451.

Unless this amendment (Laws 1875, ch. 53) has altered the statute of uses and trusts (1878 G. S. ch. 45) so as to make the whole statute, and particularly section one (1) of it, applicable to all other trusts in personal property, trusts in personal property are not affected by the provisions of the act of 1875, which becomes merely declaratory. The other sections of the chapter, and particularly section one, (1,) still on their face relate exclusively to real estate. In order to prohibit trusts in personalty other than those mentioned in this fifth subdivision this amendment of section eleven (11) must act as an amendment of section one (1) by which alone other trusts are prohibited. But unless this wide effect is given, other trusts in personalty are not prohibited. We submit that such is not the true construction of this amendment. A vivid portrayal of the results of an abolition of trusts in personalty is given in *Kane* v. *Gott,* 24 Wend. 663.

Even if we are wrong in supposing that trusts in personalty have not been abolished by the act of 1875, trusts like the one at bar are provided for by 1878 G. S. ch. 43, § 11, subd. 2; Id. § 12. This is a trust to sell land for the benefit of legatees, and the trustees are

expressly empowered to take the rents and profits.    This is therefore
a valid trust.    But if this is not a valid trust, then by 1878 G. S. ch.
43, § 5, the property vests forthwith in the appellants, the heirs, and
there remains a power in trust in the executors to sell the land and
pay the proceeds to The Sheltering Arms.    *Downing* v. *Marshall*, 23
N. Y. 366; *Konvalinka* v. *Schlegel*, 104 N. Y. 125; *Robert* v. *Corning*,
89 N. Y. 225; *Post* v. *Hover*, 33 N. Y. 593; *Randall* v. *Constans*, 33
Minn. 329; *Henderson* v. *Henderson*, 113 N. Y. 1; *Martin* v. *Martin*,
43 Barb. 172; *Tucker* v. *Tucker*, 5 N. Y. 408.

The Sheltering Arms will in any event be entitled to the rents and
profits as well as to the amount realized on the sale, after payment
of taxes and expenses.    *Lent* v. *Howard*, 89 N. Y. 169; *Moncrief* v.
*Ross*, 50 N. Y. 431; *Belmont* v. *Ponvert*, 63 N. Y. 547; *Robert* v.
*Corning*, 89 N. Y. 225; *Kearney* v. *Missionary Soc. of St. Paul the
Apostle*, 10 Abb. New Cas. 274; *Morse* v. *Morse*, 85 N. Y. 53: *Cruik-
shank* v. *Home for the Friendless*, 113 N. Y. 337.

To appellants' claim that the bequest is void under the Minnesota
rules against perpetuities, we answer that Minnesota has no stat-
ute against perpetuities, in personalty.    Our statute against per-
petuities is applicable only to realty.    *Toms* v. *Williams*, 41 Mich.
552; *Penny* v. *Croul*, 76 Mich. 471; *Dodge* v. *Williams*, 46 Wis. 70;
*De Wolf* v. *Lawson*, 61 Wis. 469; *Simpson* v. *Cook*, 24 Minn. 180;
Gray, Perp. § 751; 1878 G. S. ch. 45, §§ 14–16.

The Minnesota statute does not apply to this case because *first*,
there is no suspension of the power of alienation, *Robert* v. *Corning*,
89 N. Y. 236, and *second*, because conversion occurs here and the
fund is, in contemplation of law, a sum of money payable immedi-
ately.    But even if this were otherwise, the Minnesota law applicable
to perpetuities in personalty is the common-law rule.    By that rule
a suspension of twenty-one years in gross, irrespective of the life of
any one, was permitted.    *Cadell* v. *Palmer*, 1 Cl. & F. 372; *Toms*
v. *Williams*, 41 Mich. 552; *Barnitz* v. *Casey*, 7 Cranch, 456;
*Pleasants* v. *Pleasants*, 2 Call, 319; Gray, Perp. §§ 223, 224.

But further, the common-law rule against perpetuities never had
any application to charitable trusts.    *Russell* v. *Allen*, 107 U. S.
163; *Penny* v. *Croul*, 76 Mich. 471; *Dodge* v. *Williams*, 46 Wis. 70.

Does the doctrine of charitable uses in personalty obtain in Minnesota? *Little* v. *Willford,* 31 Minn. 173, dealt exclusively with trusts in realty, and in the opinion there rendered, the decision was expressly limited to questions of real property. In New York the question remained undecided till the case of *Holland* v. *Alcock,* 108 N. Y. 312. After leaning for some forty years first one way, then the other, the New York Court of Appeals finally determined that the doctrine of charitable uses in personalty did not obtain in that state. On the other hand, in Wisconsin and in Michigan the rule is settled that the doctrine of charitable uses in personalty still subsists. *Dodge* v. *Williams,* 46 Wis. 70; *Penny* v. *Croul,* 76 Mich. 471.

All three of these states have the same statute of Uses and Trusts as has Minnesota. If the·respondents are in error in believing this to be a valid bequest, then this directory power of sale in the codicil falls with the bequest, and this land remains land and goes to the heirs—unless it is covered by the residuary clause in the will. The contention of the appellants on this point is that land invalidly devised does not fall into the residuary estate, but goes directly to the heirs. Such was once the law, but it does not now obtain. When wills carried lands solely by virtue of appointments under conveyances to uses to be designated by will, this was true; but this difference between personalty and realty disappeared before our modern power of making wills, and now realty falls into a residue, in the same manner as does personalty. This is the settled construction of the New York act which is substantially similar to section eighteen (18) of our Probate Code. *Cruikshank* v. *Home for the Friendless,* 113 N. Y. 337.

We come now to the discussion of the most difficult question in this case, viz., Is The Sheltering Arms entitled to one half of the residue of the estate, under the residuary clause of the will which reads as follows: "All the rest and residue of my property at the time of my death, of whatsoever nature and wherever situate, I devise and bequeath to my said executors and trustees, in trust, however, to sell and convert the same into money, and the proceeds thereof to divide equally between the said St. Barnabas Hospital and the insti-

tution which shall take under the tenth bequest of this will." The trouble arises from the last clause in this quotation. The testator having by the codicil declared the ninth and tenth clauses of his will, and each and every thing therein, null and void.

Clauses in a will, though invalid under the statute of uses or the rules against perpetuities or any other rule of law, may nevertheless be resorted to for the comprehension and construction of other portions of the will. *Kiah* v. *Grenier*, 56 N. Y. 220; *Wetmore* v. *Parker*, 52 N. Y. 450; *Van Nostrand* v. *Moore*, Id. 12; *Tucker* v. *Tucker*, 5 N. Y. 408; *Van Kleeck* v. *Dutch Church of New York*, 20 Wend. 457.

And where a residuary bequest is made to a legatee previously described, by reference to the previous description, it is treated as though the previous description were there repeated in terms. *Wetmore* v. *Parker*, 52 N. Y. 450; *Francis* v. *Collier*, 4 Russ. 332; *Bridges* v. *Strachan*, 8 Ch. Div. 558.

Neither invalidity nor revocation of the clause referred to, prevent its being considered for construing and comprehending the referring clause. The actual incorporation of this respondent after the will was drawn fulfilled the terms of the tenth clause prior to the death of the testator, and obviated all difficulties. *Shipman* v. *Rollins*, 98 N. Y. 311; *Holmes* v. *Mead*, 52 N. Y. 332; *Kearney* v. *Missionary Soc. of St. Paul the Apostle*, 10 Abb. New Cas. 274.

Even if clause ten and the actual incorporation of this respondent were wholly inadequate to compass a designation of a beneficiary of the residuary clause, all difficulties of this nature have been removed by the express designation in the codicil of this respondent as the beneficiary selected by the testator.

Is a gift to executors for a corporation to be formed under a general law, void? It is obvious that a corporation was contemplated as beneficiary in any event, and the testator had no thought of unincorporated associations. *Dodge* v. *Williams*, 46 Wis. 70.

The obvious intent was, that the corporation endowed, be organized under the general laws of this state, as might readily be done. A legacy to executors for a corporation to be organized under a general law, is valid. The organization of this respondent prior to the

testator's death removed all question, but without that fact it seems clear that a legacy to executors for a corporation to be formed by them under a general law, is good. It is well settled in all the states, including New York, that a legacy to a corporation not *in esse*, but to be organized within the time allowed by the rule against perpetuities for the vesting of an estate, is good. *Shipman* v. *Rollins*, 98 N. Y. 311; *Burrill* v. *Boardman*, 43 N. Y. 254; *Kearney* v. *Missionery Soc. of St. Paul the Apostle*, 10 Abb. New Cas. 274; *Ould* v. *Washington Hospital for Foundlings*, 95 U. S. 303; *Russell* v. *Allen*, 107 U. S. 163.

Further it is well settled that the rule against perpetuities has no application to delays merely incident to doing preliminary acts. *Robert* v. *Corning*, 89 N. Y. 225; *Manice* v. *Manice*, 43 N. Y. 303; *People* v. *Simonson*, 126 N. Y. 299; *Ould* v. *Washington Hospital for Foundlings*, 95 U. S. 303; *Russell* v. *Allen*, 107 U. S. 163; *Milne* v. *Milne*, 17 La. 46.

If it is necessary to consider this a contingent future interest dependent on the organization of the corporation within the time permitted, it will be so construed. Mere non-existence of the corporation is not alone sufficient, even under the New York rule, to defeat the bequest. *Burrill* v. *Boardman*, 43 N. Y. 254; *People* v. *Simonson*, 126 N. Y. 299.

The great claim of the appellants is, that the express revocation of the tenth clause revoked also the bequest in the residuary clause of half the estate to the institution, which should take under the tenth clause, leaving one half the residue of the estate to go to the appellants by the silent operation of the law. The claim of this respondent is, that an opposite intention is manifest on the face of the papers, and also that the codicil renders immaterial all questions concerning the original validity of the tenth clause. Mr. Martin concluded that The Sheltering Arms met his views as to the institution which he desired to aid. It is obvious that he intended simply to substitute this particular institution as the beneficiary of his bequests, appointing it himself as the object of his bounty, instead of leaving the selection to his trustees. The date of the will is the date of the codicil, the latter acting as a republication,

and will and codicil are together one instrument of the date of the codicil. 1 Redf. Wills, 288; *Neff's Appeal*, 48 Pa. St. 501; *Van Kleeck* v. *Dutch Church of New York*, 20 Wend. 457; *Quincy* v. *Rogers*, 9 Cush. 291.

A residuary bequest to those who take under prior clauses of a will is not necessarily revoked by the mere revocation of the prior clause. *Wetmore* v. *Parker*, 52 N. Y. 450; *Hard* v. *Ashley*, 117 N. Y. 606; *Colt* v. *Colt*, 32 Conn. 432; *Doe* v. *Marchant*, 6 Man. & G. 813; *Hearle* v. *Hicks*, 8 Bing. 475; *Quincy* v. *Rogers*, 9 Cush. 291; *Hall* v. *Severne*, 9 Sim. 515; *Darley* v. *Langworthy*, 3 Brown, Parl. Cas. (Tomlins' Ed.) 359; *Francis* v. *Collier*, 4 Russ. 332; *Bridges* v. *Strachan*, 8 Ch. Div. 558.

One remaining point calls for a moment's consideration. The court below found the forfeiture clause, in the case of contesting of the will or any part thereof, valid. Whether there has been a contest or no remains undecided as not presented or involved in this case. The rule seems to be that such a clause is valid. *Bradford* v. *Bradford*, 19 Ohio St. 546; *Evanturel* v. *Evanturel*, L. R. 6 P. C. 1; Id., 1 Quebec Law R. 74; *Cooke* v. *Turner*, 15 Mees. & W. 727; 2 Redf. Wills, p. 298.

*Jackson & Atwater*, for the executors.

*M. H. Sessions*, for St. Barnabas Hospital.

GILFILLAN, C. J. September 24, 1884, Richard Martin, then owning two tracts of land, or farms, near Minneapolis, in this state, a house and lot in the village of Red Hook, Dutchess county, N. Y., and nearly $100,000 in notes, mortgages, money, and bonds, made his will. He then resided in the state of New York, but he had for many years resided in Minneapolis. He had no wife; and a brother and sister of the full blood, who are also legatees in clause two of the will, and a sister of the half blood, who is also a legatee, were his next of kin, and upon his death were his sole heirs at law. The will contained eleven clauses. By the third, fourth, fifth, sixth, and seventh he made specific bequests to each of his next of kin, and to other more distant relatives. The second, ninth, tenth, and residuary clauses come in question here.

October 1, 1888, no other changes in his circumstances than as recited in the codicil having taken place, he executed the codicil to his will.

The word "eleventh" in the codicil is manifestly a clerical error, and it is conceded that it should be "tenth."

The action is brought to get a construction of the will and codicil, and a decision upon some of the bequests made by them.

Very many questions are raised, and they are argued in the briefs with great ability and thoroughness, everything that could be said for or against the several propositions being fully set forth.

The legatees in clause two claim that by the codicil that clause was so modified as to make a bequest absolute to Anna S. Russell and Walter S. Martin of $30,000, to be divided between them in the proportion specified in the clause in place of the income of $21,000 to be so divided, and also another absolute bequest of $30,000 to the children who, by the terms of the clause, were to take the $21,-000 after the deaths of Anna S. and Walter S. It is difficult to see how any one could reach those conclusions upon the codicil. Its meaning is very plain,—to increase the sum mentioned in the clause, and make it $30,000 instead of $21,000. That increase of course increases in the same ratio the annual income to be paid to Anna S. and Walter S., and the shares in the principal sum to be paid to the children upon the death of one or both of those two persons. What is said in the codicil as to the proportions in which payments are to be made to Anna S., Walter S., and the children was manifestly inserted from (probably unnecessary) caution, and to exclude an inference that a change was intended in respect to those payments. It would be a forced and unnatural construction to hold that the testator intended by so indirect and ambiguous a form to change the whole plan of the clause, when direct and explicit terms for expressing the intention must have been present in his mind with such intention if he had it.

On the part of the heirs it is claimed that the testator died intestate as to the half of the residue of the estate left to the trustees for "the institution which shall take under the tenth bequest of this will."

v.49m.—4

Various reasons are assigned for this proposition, only one of which we need now consider. It is, in substance, that, as the will is modified by the codicil, no beneficiary for that one half of the residue can be ascertained. Of course, if the legatee intended by a bequest cannot be ascertained by the will, the bequest must of necessity fail. The argument is that by the terms of the residuary clause no beneficiary can take that half of the residue, except the institution which shall take under clause ten, and, as that clause is annulled, there can be no taking under it, and consequently there can be no beneficiary answering to the description in the residuary clause. Where a bequest is made to one by name or by a sufficient description, and another bequest is made, not repeating the name or description, but referring for the legatee to the other bequest, it is as though the name or description were repeated, and the latter bequest will not fail because the former does, unless the intention be apparent to make the latter bequest depend on the former taking effect.

The plan of clause ten was to endow with the property mentioned an orphans' home or an asylum for aged and infirm persons in the city of Minneapolis, under the control and management of the members of the Protestant Episcopal churches in that city, a corporation for the purpose to be organized by the trustees named, or one of them, and, when formed, the trustees were to turn the property over to it. And, in case such an institution as the clause described should be in existence in said city at the testator's death, then they were authorized, in their discretion, to turn the property over to that institution. We are not now concerned with the validity of the provisions of that clause. We are now seeking to find what the testator intended—what was in his mind—at the time he executed the will, as a guide to his intentions in making the codicil. No existing beneficiary is named or described in clause ten. The beneficiary is to be brought into being by the act of the trustees, or in a certain event ascertained by their selection or adoption.

The residuary clause leaves the residue of the estate for St. Barnabas Hospital, and the institution so organized or selected, and so taking the bequest in clause ten. The only way in which, either for the purposes of clause ten or of the residuary clause, the latter bene-

ficiary could be ascertained, was that provided in clause ten, to wit, by the acts of the trustees in incorporating or selecting a home or asylum, and appropriating to it the bequest in that clause. Such acts, when done, and only such acts, would point out the beneficiary intended in the residuary clause. The latter clause contains no authority to the trustees to either incorporate or adopt a beneficiary for its purposes alone. It is also apparent that the testator intended the bequest in clause ten and one half of the residue of the estate to go together to the same institution. The residuary bequest was therefore dependent on the other.

When the authority to the trustees to incorporate or select a corporation to take under clause ten was withdrawn by annulling that clause, no act of theirs could ascertain or point out the beneficiary intended by the residuary clause. Had the codicil stopped with annulling clause ten, no beneficiary to share the residue with St. Barnabas Hospital could have been ascertained. A case would then have been presented where the court is driven to the conclusion that a testator, in spite of his intention to the contrary, has died partially intestate.

But on behalf of the Sheltering Arms it is claimed that the codicil brings it in as, or in lieu of, the institution intended in clause ten and the residuary clause. If so, then partial intestacy is avoided.

The intention of the testator, as shown by the will, was beyond question to dispose of all his estate; to die intestate as to none of it; to leave none of it to go to his heirs or next of kin by the law of descent or distribution. This is apparent, not only from the fact that the will assumes to dispose of all the estate, but from the careful and precise provision made for every person who might be regarded as a natural object of the testator's bounty, and who might, upon his death, stand in the relation of heir or next of kin. When such is the intention, it is frequently a powerful consideration in the interpretation of a will. In such cases courts will not hold that a testator died intestate as to any part of his estate, unless driven to the conclusion that he has done so in spite of his intention to the contrary. It may, in a particular case, be impossible to ascertain who is the intended devisee or legatee, or such devisee or legatee

may be incompetent to take, or the bequest may be void because in violation of some rule of law,—as where it attempts to create an unlawful trust or perpetuity; and in such case the property included in it will fall into the residue of the estate, and, if there be no devisee or legatee appointed to take the residue, partial intestacy will of necessity be the result. But the court will avoid that result if it can be done by any reasonable interpretation. The presumption is that the testator intended that interpretation which supports the will in all its parts and for all its purposes, and not such a one as will defeat any part of it.

The changes made by the codicil consist in the increase of the bequest in clause two; the revocation of the money bequests in clauses nine and ten, so that those sums fell into the residue; the excluding from the specific devises of one tract of land because it had been conveyed by deed; in devising the other tract for a beneficiary not named in the will; in withdrawing from the trustees authority to organize or adopt a beneficiary; and in bringing in the Sheltering Arms as an object of the testator's bounty. His reasons for making the changes are stated in the recitals. Those reasons are important and influential considerations in the interpretation to ascertain the extent of the changes intended wherever there is ambiguity in the terms employed. The change in values of real estate consisting, as found by the court below, in an increase, especially as to the tract described in clause ten, furnishes a reason for increasing the bequest in clause two, and probably for the transposing, so to speak, of the tracts of land devised by clauses nine and ten, so that the tract described in clause ten goes, under the conveyance recited, to the beneficiary named in clause nine, and the tract described in clause nine goes to the new beneficiary. The other fact recited, to wit, "the establishment in the city of Minneapolis of institutions of the same or of similar nature to those which the *bequests* named in my will were intended to establish or aid," can hardly be supposed to have influenced him in making the two changes last above referred to; but it stands out as the reason for the testator designating a beneficiary himself, and bringing in an institution of the kind which the bequests in the will were intended to establish or aid, instead of leaving it to his trustees to

organize or select one. That recital cannot refer to St. Barnabas Hospital, for that had been established before he executed the will. It can refer only to institutions of the same or similar nature as those described in clause ten,—that is, orphans' homes, and asylums for aged and infirm persons, under the control and management of the Protestant Episcopal churches of Minneapolis, or members thereof. It appears that the Sheltering Arms was incorporated after the will and before the codicil was executed, and it differs from the orphans' home described in clause ten only in this: that communicants of the Protestant Episcopal church generally (and not merely members of the local churches) may become members entitled to vote, and so to control and manage it. It is not found as a fact, nor is there evidence to show, that any other institution, either orphans' home, or asylum for aged and infirm persons, in any way answering to the description in clause ten, had been established when the codicil was executed. It is therefore beyond question that in reciting the fact in consequence of which he, by the codicil, expunged clause ten, the testator had in mind the Sheltering Arms, and no other institution. He found existing an institution such as he had in mind in preparing clause ten and the residuary clause; and because he found such institution already existing he designated it as the object of his bounty, and took from the trustees the power he intended by clause ten to confer on them,—to organize or select one which should take under that clause, and also under the residuary clause.

Did he intend thereby to revoke the residuary clause as to one half the residue, die intestate as to that half, leaving it to be distributed by the law, or did he intend it to stand with the object of his bounty thus selected by him, to take under it in lieu of an institution to be organized or selected by his trustees as at first contemplated?

It must, of course, be presumed that when executing the codicil he knew that the will contained a residuary clause, how and to whom that clause assumed to dispose of the residue of his estate, that, with clause ten annulled, there could be no possible legatee for half the residue, and that he would consequently die intestate as to that half, unless he provided one in place of the legatee originally in-

tended. There is, then, but this alternative: he intended to revoke the clause as to one half the residue and die intestate as to that half, or he intended to let it stand with a substituted legatee. If the latter, then he intended the beneficiary brought in by the codicil —the Sheltering Arms—to be such legatee.

An intention to revoke or in any way modify the residuary clause is not expressed in the codicil; it must be found by implication. The clause is not alluded to at all in the codicil. What the testator intended with respect to it must be implied from the codicil, read in connection with the will, in view of the surrounding circumstances, especially those he recites as his reasons for making the codicil. It is urged, if he intended to substitute a new legatee in the clause, why did he not say so? On the other hand, it is urged with equal force, if he intended to revoke the clause, why did he not express that intention? Why did he leave it not alluded to at all? The answer to both of these suggestions is that the necessity or propriety of saying anything about it probably did not occur to the testator.

The general scheme of the will, when executed, was to provide by specific or money bequests for all the testator's relatives, and to endow two charitable institutions,—one a hospital, the other an orphans' home, or an asylum for aged and infirm persons,—each of the two to be endowed by a specific devise of real estate and a bequest of money, and of one half the residue of the estate; one half the residue was to go with each specific tract of land. As the testator then thought, neither the tract of land, nor the money bequests, nor half the residue, was by itself a sufficient endowment for either of the institutions. There was certainly no change of intention to endow two such institutions. The plan has been carried out with respect to the hospital by conveying one of the tracts for its use, and leaving the residuary clause unchanged. As to the adequate endowment of that institution, he had not changed his mind. There is nothing from which to infer a change of mind as to that point in regard to the orphans' home, unless it be that he devised to it the tract of land, without inserting its name in the residuary clause, which, as he was devising to it in lieu of the institution to

be organized, under clause ten, the land described in clause nine in lieu of that described in clause ten, he may not have thought to be necessary, or the propriety of which may not have occurred to him. The suggestion that the fact of its being already established was, in the mind of the testator, a reason for not endowing it so fully as he intended to do the institution to be organized under clause ten, has little force, in view of the provision in that clause, authorizing the trustees to turn over the specific bequests to an already established institution, if there should be one at his death, and the residuary clause that one half the residue should follow it.

Taking the will and codicil together, and in view of the circumstances which induced the execution of the latter, as recited in it, it seems to us much more probable that the testator brought the Sheltering Arms into the plan for distributing his property as, or in lieu of, the institution contemplated in clause ten and the residuary clause; that he intended it to stand in his will as one of the two charitable institutions, to be endowed each by a specific devise of real estate, and a bequest of one half the residue of his estate,—than that he intended to revoke the bequest in the residuary clause for such an institution.

We therefore hold that the testator intended the Sheltering Arms to take under the residuary clause, in lieu of the institution originally described in it.

In arriving at this conclusion we have taken into account no extrinsic facts but those recited in the codicil, and it was competent for the court below to admit evidence as to those facts, to put itself as nearly as might be in the place of the testator in respect to the subjects and objects of his testamentary dispositions. If any other evidence was erroneously admitted it was harmless.

As clause ten was annulled, so that no disposition of the property depends upon it, there is no necessity to consider whether it was valid or void.

Of the proposition that the residuary bequest to St. Barnabas Hospital was revoked by the codicil, all that is necessary to say is that there is no basis for it.

The clause in the codicil following the devise of land to the executors: "And as soon as, in the judgment of my said executors, the same can be sold for a reasonable price, (and not later than ten years after my decease,) to sell the same, either in a body or in separate portions," etc.,—does not suspend the power of alienation for any period. The executors may not exercise the power till the end of the ten years, and ten years may extend beyond the duration of two lives. But that the power of alienation may not be exercised within the period prescribed by statute is not the test. The test is, can it be exercised, and a good title passed, within the prescribed period? The executors had the power to alienate and pass the title as soon as they qualified. That they are to sell as soon as in their judgment the same can be sold for a reasonable price does not limit the power to alienate and pass the title, and puts no restriction on their exercise of it beyond what the law would impose, though the clause were omitted.

The proposition that under the provisions of the will the legatees Russell, Walter S. Martin, and Brown have forfeited their legacies cannot be considered, because—*First*, no facts are found on which to base it; *second*, that there was no decision of the point by the court below; *third*, no one but those legatees appeals.

Order affirmed.

MITCHELL, J., took no part in the decision.

(Opinion published 51 N. W. Rep. 624.)