IN THE MATTER OF THE ESTATE OF FRANK H. PEAVEY, DECEASED.

LUCIA L. HEFFELFINGER AND OTHERS v. KATHERINE JORDAN PEAVEY APPLETON.[1]

November 28, 1919.

Nos. 21,331, 21,332.

**Will — residuary estate — construction.**
    1. A will gave certain legacies and created several trusts directing the deposit of funds in trust, the income to be paid to beneficiaries for life. On the death of each legatee, the funds deposited for his benefit were to become part of the residuary estate. The will directed that the balance of the estate be transferred to a corporation to be formed. The residuary estate, made up mostly of the returned deposits, the will gave to the wife and children of the testator and provided: "That if either of my children shall die without leaving a child or children, then the share of such child shall become the property of the survivor or survivors, it being my intention that the surviving child, in case the others die without leaving a living child or children, shall have the whole balance of my estate." The executors, having in their possession a substantial sum of money, petitioned the probate court for an order making a partial distribution, and asking a construction of that clause of the will. The court construed the will and ordered the distribution.

**Decree of distribution — construction of will by probate court.**
    2. The probate court had jurisdiction to construe the will for the purpose of determining to whom distribution should be made. Regular proceeding demands the entry of a decree of distribution by the probate court. That court alone can discharge the executor and determine the devolution of title to the property of the estate. If the executor has transferred property in anticipation of a proper decree, such decree may subsequently be made.

    1Reported in 175 N. W. 105.

**When omitted question of law may be decided by supreme court.**

    3. Where no question of fact is involved, and no appeal is made to discretion, and the question is purely one of law, this court may, with consent of all parties, determine a question not passed on by the trial court.

**Will — residuary clause construed.**

    4. The clause of the will above quoted, construed in connection with the balance of the will, means that, upon the death of one of the testator's children without issue, the others shall take his share, whether such death occur before or after the death of testator.

    The executors of the estate of Frank H. Peavey, deceased, petitioned the probate court for Hennepin county for an order making partial distribution of the residuary estate and for the construction of item 36 of testator's will. The petition was heard by Dahl, J., who made findings and as conclusion of law ordered distribution of certain moneys to the beneficiaries. From the order of the probate court construing item 36 of the will, Katherine Jordan Peavey Appleton appealed to the district court for that county. The appeal was heard by Rockwood, J., who reversed the decree of the probate court for want of jurisdiction and remanded the case. From the judgment entered pursuant to the order for judgment, all parties appealed. Reversed.

    *Frank B. Kellogg, Cordenio A. Severance, George W. Morgan* and *Richard Reid Rogers,* for K. J. P. Appleton.

    *Lancaster & Simpson,* for the executors and daughters of testator.

HALLAM, J.

    1. Frank H. Peavey died testate December 30, 1901. He left two daughters and one son. The elder daughter was married to Frank T. Heffelfinger. They then had three children and now have four. The younger daughter was married to Frederick B. Wells. They then had one child and now have four. The son was married to appellant. He died childless in 1913. Appellant has since remarried. Mr. Peavey was engaged principally in the grain and elevator business and was possessed of large wealth. In his will he gave some specific legacies. He created many trusts, in each case directing the deposit of money or securities with a trust company during the life of the beneficiary, and directing that, upon the death of the beneficiary, the securities so deposited should

144 M.—14.

become part of the residuary estate. He directed that $200,000 be placed in trust for the benefit of each of his three children, and that, if any child died leaving issue, the fund deposited for his benefit should be paid to such issue; if no issue, then the fund should become part of the residue.

His son and sons-in-law were his partners in the firm of F. H. Peavey & Company. He directed that they continue the business for five years, and that, at the expiration of that time, they form a corporation, to which the executors should transfer all property then belonging to the estate, except that held in trust. He directed that there should be sold to his son and sons-in-law, each, one-third (1/3) of the capital stock of the corporation, taking therefor a note payable out of dividends, and that one such note shall be transferred to each of his children so that each should receive, including the $200,000 placed in trust, $1,000,000.

The estate has never been closed. In March, 1918, the executors, having in their possession a substantial sum of money, petitioned the probate court for an order making a partial distribution of the residue of the estate, and asking that the court determine the proper construction of "item 36" of the will. Item 36 reads as follows:

"All the balance of my estate I give and bequeath to my beloved wife and to my three children, one-third (1/3) to my wife and two-thirds (2/3) to my three children, share and share alike, provided, however, that if either of my children shall die without leaving a living child or children, then the share of such child shall become the property of the survivor or survivors, it being my intention that the surviving child, in case the others die without leaving a living child, or children, shall have the whole balance of my estate."

The probate court ordered the distribution and in so doing construed "item 36" to mean that on the death of one child, either before or after the testator, his share of the residue should become the property of the surviving children. Appellant, claiming the share of George W. Peavey as part of his estate, appealed to the district court.

After the conclusion of the argument, the district judge, of his own motion, gave judgment that the decree of the probate court be reversed for want of jurisdiction, and remanded the case with instructions to take

no further proceedings not consistent with such judgment. Both parties appeal.

2. Both parties contend the district court was in error in ruling that the probate court had no jurisdiction. We agree with this contention. The probate court has exclusive jurisdiction over administration of estates. It has exclusive jurisdiction to decree the distribution of an estate. Regular proceeding demands the entry, by the probate court, of a decree of distribution, when property comes into possession of an executor. The probate court alone can determine the devolution of the title to the property of the estate. In re Scheffer's Estate, 58 Minn. 29, 59 N. W. 956. See Culver v. Hardenbergh, 37 Minn. 225, 33 N. W. 792. For the purpose of determining to whom distribution shall be made, the probate court has jurisdiction to construe the will. Appleby v. Watkins, 95 Minn. 455, 14 N. W. 301, 5 Ann. Cas. 471. See Fiske v. Lawton, 124 Minn. 85, 144 N. W. 455.

The district court apparently understood the law as we do as to these propositions, but was of the opinion that the executors had disposed of all the property of the estate in the manner provided by the will, and that, this having been done, no decree could properly be made. In view of the fact that assets, declared by the will to be part of the residuary estate, are now admittedly in the hands of the executors, and are claimed by legatees as such, it is clear that all property of the estate has not been disposed of. Nor do we doubt that, if an executor transfers property to the party to whom the will directs, in anticipation of a proper decree, such decree may subsequently be made.

3. In view of the fact that the trial court made no decision on the merits, doubt may arise as to the propriety of our determining the merits on appeal. This court is an appellate court, and does not, as a rule, entertain a controversy without a determination by the trial court. In this case no question of fact is involved. No appeal is made to the discretion of the court. The question is one of law, involving a determination of the construction of the language of the will from a reading of the will itself. Both parties urge that the court determine the merits. A majority of the court are of the opinion that we should do so, that, under the conditions mentioned, the principle to be applied is that stated in Hawke v. Banning, 3 Minn. 30 (67), and Babcock v. Sanborn, 3 Minn.

86, (141) namely, that this court may pass upon questions not determined by the trial court, where it is evident that the record would not be aided by verdict or decision below.

4. Coming to the merits: We agree with the probate court's construction of the will. Counsel for appellant invoke as an aid to the ascertainment of the testator's intention, what they conceive to be the correct rule as follows:

"Where a testator leaves a bequest to A, but if A should die without children, then to B, the testator, in the absence of language or circumstances clearly showing a different intention, is presumed to mean the death of A before that of the testator, so that if A survives the testator, his interest in the bequest becomes absolute."

Counsel for the executors take issue as to the correctness of this rule, and contend that, where such language is used in a will, the court should interpret the devise over as taking effect, according to "the ordinary and literal meaning of the words," upon death at any time, whether before or after the death of the testator. Each contention has the support of much respectable authority. Many of the cases sustaining appellant's contention will be found cited in Fowler v. Duhme, 143 Ind. 248, 42 N. E. 623; see also Lawlor v. Holohan, 70 Conn. 87, 38 Atl. 903; Lumpkin v. Lumpkin, 108 Md. 470, 70 Atl. 238, 25 L.R.A. (N.S.) 1063; Dameron v. Lanyon, 234 Mo. 627, 138 S. W. 1; In re Owen's Will, 164 Wis. 260, 159 N. W. 906. Some of the most pointed decisions sustaining respondent's contention are Britton v. Thornton, 112 U. S. 526, 5 Sup. Ct. 291, 28 L. ed. 816; Matter of Cramer, 170 N. Y. 271, 63 N. E. 279; Smith v. Kimbell, 153 Ill. 368, 38 N. E. 1029; O'Mahoney v. Burdett, L. R. 7 H. L. 388.

In many of the cases there were other important, and in some cases, controlling circumstances. Language such as that quoted by appellant's counsel seldom stands alone.

Apparently the majority in number of decisions favor the rule as stated by appellant's counsel. If we had the bald proposition of such a clause entirely uncontrolled by context or other extraneous circumstances, we should be much inclined to follow that rule. It conduces to the early vesting of the legacy, a result which the law justly favors, Union Mut. Assn. v. Montgomery, 70 Mich. 587, 38 N. W. 588, 14 Am. St. 519, and

it avoids the complications which in many cases arise from the difficulty of identifying and recalling the property bequeathed after a period of enjoyment by the first legatee. Nor are we unmindful of the rule that, where an estate is bequeathed absolutely to one person, it is not to be diminished or limited by subsequent provisions of doubtful meaning. Long v. Willsey, 132 Minn. 316, 156 N. W. 349. But after a careful perusal of the whole will we are of the opinion that when Mr. Peavey willed that "the surviving child, in case the others die without leaving a living child, or children, shall have the whole balance of my estate," he intended to refer to death of children, after as well as before, his own death.

We refer briefly to some of the considerations that lead us to this conclusion.

The court will have regard for the common desire of men to favor with their bounty their own kin. In re Oertle, 34 Minn. 173, 24 N. W. 924, 57 Am. Rep. 48; In re Korn's Will, 128 Wis. 428, 107 N. W. 659. Mr. Peavey made his own inclination to this purpose clear in many ways.

Under general rules of law, recognized by implication in G. S. 1913, § 7262, had George W. Peavey died without issue, before his father, his residuary legacy would have lapsed in favor of his sisters. 40 Cyc. 1508, 1509. If this was *all* that item 36 meant to accomplish, it accomplished nothing.

The residuary estate disposed of by item 36, consisted mostly of assets which were directed to be deposited with trustees, for the life of specific beneficiaries. Of necessity, therefore, the residuary estate could not come into possession of the residuary legatees until the lapse of a substantial time after the death of the testator.

Some of these trusts were in favor of the children of the testator. It is unlikely that he intended to vest in them, immediately on his death, an interest in these assets, which were not to become a part of the residue until after their death.

One of these trusts was in favor of appellant Appleton. On her death leaving a child by testator's son, the property deposited for this trust was to go to such child, if no such child, then into the residuary estate. It is unlikely that the testator intended that she should nevertheless have a vested interest in that fund.

But resort to these considerations seems unnecessary. When we read items 35, 36, and 37 together, there seems no real doubt as to the meaning of item 36. Item 35 made contingent provision for a second trust of $100,000 in favor of the testator's wife and children.

Reading items 35, 36 and 37 together, without paragraphing, we have the following:

"In case my estate exceeds the amount of the various bequests above made and the various sums placed with said trust companies   *   *   * then I direct my executors   *   *   *   that they place the sum of $100,- 000 in trust   *   *   *   for each of my three children.   *   *   *   At the decease of either of my children   *   *   *   the fund placed with said trust companies for said child be paid to the child or children of such deceased son or daughter   *   *   *   but if such deceased son or daughter shall have died without leaving a child or children living, then such fund shall become a part of my residuary estate.   *   *   *   All the balance of my estate I give and bequeath to my beloved wife and to my three children, one-third (1/3) to my wife, and two-thirds (2/3) to my three children, share and share alike, provided, however, that if either of my children shall die without leaving a living child or children, then the share of such child shall become the property of the survivor or survivors, it being my intention that the surviving child, in case the others die without leaving a living child or children, shall have the whole balance of my estate.   *   *   *   It being my intention to give each of them, including the two hundred thousand dollars . ($200,000) placed in trust for them, the sum of one million dollars ($1,000,000), if my estate amounts to enough to do so; and if it amounts to more, then I intend them, or the survivors of them as above stated, and their mother, in the proportions above named, to have the balance."

The provision of item 35, that on the death of a child, his issue should take the body of the trust fund deposited for his benefit, but, if such child should die childless, then the fund should pass into the residuum is significant. When, in this connection, the testator willed, that "the surviving child, in case the others die without leaving a living child or children, shall have the whole balance of my estate," and that "I intend them or the survivors of them   *   *   *   to have the balance," it seems

very clear that he referred to survivorship of the children as among themselves and not to their survival of himself.

The case will be remanded with directions to the district court to reverse its judgment and affirm the decree of the probate court.

Judgment reversed.

BROWN, C. J. and DIBELL, J. (dissenting).

We dissent from so much of the opinion as holds that the testator's residuary estate did not vest in the devisees named in his will, all of whom survived him, upon his death. The law greatly favors the early vesting of estates. It prefers the disintegration of estates rather than their indefinite perpetuation or contingent vesting. Its policy in this respect largely induced the rule quite generally adopted, and which we approve, that a will making a devise over upon the death of the first taker is to be understood to refer to the death of the first taker if it occurs within the life of the testator, and if the first taker survives the testator the devised estate vests in him absolutely. The rule is applied with the limitation that, if it clearly appears that this was not the testator's intention, and he intended a devise over upon the death of the first taker whether it occurred before or after his own death, his intention is given effect.

The will of Peavey, as construed by the probate court, taking the life expectancies of his three children at his death, postponed the vesting of his residuary estate for many years, and we are not now concerned to inquire whether the devisees of the residuary estate, if it did not vest at his death, could hasten its vesting by agreement. We are not blind to the provisions in the will which give force to the argument that Peavey, after bountifully providing by specific gifts for his blood relatives, kin and others, intended that his residuary estate should go to his blood relatives. All this is fairly and forcefully discussed in the prevailing opinion. But having in mind the guiding rule of construction, we are unable to concur in the view that the testator intended that, as to the residuary estate, the will should not take effect and speak as of the date of his death, and it seems to us that, if he had been advised that the will as written necessarily would exclude his son-in-law and confidential business associate Wells from sharing in the residuary estate, if his wife should die without

issue, it would not have been executed in its present form. The same situation is presented as to his other son-in-law Heffelfinger. Both men sustained close business and personal relations with the testator, and he knew that their efforts in a large measure would contribute to produce the property which ultimately would find its way into his residuary estate which he confidently believed would be of considerable proportions. If the testator would not have excluded either from sharing in his residuary estate, then the construction of the probate court is wrong, for the construction of the will as to the sons-in-law applies to the daughter-in-law.