## IN THE MATTER OF THE TRUSTEESHIP UNDER THE LAST WILL AND TESTAMENT OF LEVI H. BELL, DECEASED. MINNEAPOLIS TRUST COMPANY, TRUSTEE.[1]

October 22, 1920.

No. 21,888.

**Trust — construction of will.**

1. A will bequeathed testator's residuary estate, consisting wholly of personal property, to a trustee to be held, invested and disposed of as follows: The income was to be divided among all his children living at the time of his death, or, if any should die, then to their children. When the youngest child reached the age of 30 years, the trustee was directed to divide one-half of the corpus of the estate among all of testator's children or the descendants of a deceased child, and when the youngest child reached the age of 40 years the remainder was to be divided among testator's children or their descendants living at that time. The will was

1Reported in 179 N. W. 650.

made in contemplation of testator's early death. In construing the will, it is *held*:

(a) That the circumstances existing when it was made should be taken into account, and, being made when testator was about to die, it was not his intention to exclude from his bounty grandchildren not born until after his death.

(b) That the husband of one of testator's daughters, entitled by law to the estate of his wife (who died after the death of testator), is not entitled to the share in the trust estate which would have Been received by the daughter if she had lived.

(c) That in construing the will the court should recognize the common desire of men to favor their own kin with their bounty, and should gather testator's intention from everything contained in the will and then give effect to his intention.

(d) That where there is no gift in a will, except by way of a direction to a trustee to divide and pay in the future, the legacy does not vest until the time for payment arrives, in the absence of some provision in the will indicating a different intention.

(e) That the general rule that the members of a class for whom a legacy is provided are to be ascertained on the death of the testator, and the rule that the law favors the early vesting of legacies, should not be applied if, to do so, would defeat the accomplishment of the testator's purpose as expressed in his will.

### Suspending power of alienation of personal property.

2. A trust to invest funds for the benefit of a class, as provided by subdivision 5, § 6710, G. S. 1913, is not invalid because it may suspend the power of alienation beyond the period fixed by statute, where personal property only is the subject of the trust.

### Legacy to a class — omission of word "survivors."

3. It is a characteristic of a class legacy that, on the death of a member of the class, the survivors succeed to his interest in the legacy. The omission of the word "survivors" in such a legacy is not to be given an arbitrary effect.

The Minneapolis Trust Company petitioned the district court for Hennepin county for allowance of its account as trustee and for directions in the distribution of the income from the estate of Levi H. Bell, deceased. The petition was heard by Fish, J., upon stipulated facts which are summarized at the beginning of the opinion. The court found that the method of distributing the net income of the funds in the hands of

the trustee, accruing subsequent to the death of Alice Bell Watson, proposed and announced in and by its petition, was in accordance with the terms and intent of testator's will as expressed in the third paragraph thereof. From the judgment entered pursuant to the order for judgment, Paul H. Watson, as administrator of the estate of Alice Bell Watson, deceased, appealed. Affirmed.

*Nathan H. Chase* and *McKelvey & Stenacher,* for appellant.

*Lancaster, Simpson, Junell & Dorsey* and *Butler, Kilmer & Corbin,* for respondents.

LEES, C.

The Minneapolis Trust Company, as trustee under the will of Levi H. Bell, deceased, filed a petition in the district court of Hennepin county for the allowance of its account and for directions for the distribution of the income of the trust estate. The petition was heard on an order to show cause, directed to all the persons claiming to have a right to share in the income. The facts were stipulated, adopted by the court in its findings, and may be summarized as follows:

Mr. Bell was a resident of Pennsylvania. On December 13, 1911, while temporarily residing at Denver, Colorado, he executed his will. Eleven days later he died. When he made his will he was afflicted with an incurable disease, and was aware of the fact. He had five living children, two sons and three daughters. Two of the daughters were married. The other children were single. The eldest child was 31 and the youngest 16 years of age. Mr. Bell's wife died in 1910. He did not remarry. His daughter Alice had married one William L. Weiss and had given birth to a child that died in October, 1911. In 1915, Mrs. Weiss obtained a divorce from her husband, and in the same year married one Paul H. Watson. She died in February, 1919, a resident of Saratoga Springs, New York, and left no living issue. Her husband was appointed administrator of her estate. Under the laws of New York, he is entitled to her entire estate, which consisted wholly of personal property. Subsequent to the date of Mr. Bell's death, one of his sons died, unmarried and without issue. After the death of this son, the trust company distributed the income of the trust estate among the four surviving children, and after Mrs. Watson's death it proposed to distribute

such income among the three surviving children. Mr. Watson claims to be entitled to the share his wife would take if she were living. Mr. Bell's estate consisted wholly of personal property and amounted to $276,700. After administration of the estate was closed, the executors, pursuant to directions contained in his will, turned over the residue to the trust company, as trustee under the will. The will directed the executors to pay to each of the children the sum of $10,000, and this they had done. The third clause of the will, which has given rise to the litigation, reads as follows:

"All the rest, residue and remainder of my estate, whether it consists of real property or personal property I give, devise and bequeath to the said Minneapolis Trust Company of Minneapolis, Minnesota, to be held by the said Trust Company, and invested by them in legal securities, in trust, first: To collect the interest, income or profit arising therefrom and to divide the same equally between all my children, who are living at the time of my death, or if any of my children should die then to their children, paying the share of any minor child of mine, to the Minneapolis Trust Company as Guardian.

"To hold said residue and remainder of my estate in trust until the youngest of my children arrives the age of thirty years, at which time I direct the said Minneapolis Trust Company to divide the principal sum of my entire estate in their hands, into two equal parts, and to divide one equal part between all my children, or to the descendants of any deceased child or children, and as to the other equal part the said Trust Company is to hold the same in trust paying the interest, income or profit to my children until the youngest of my said children shall arrive at the age of forty years, when I direct the said Trust Company to divide the entire principal with any accumulations equally between all my children or to their descendants, that may be living at that time."

The district court found that the proposed distribution of the income of the trust estate among Mr. Bell's three surviving children, to the exclusion of Mr. Watson, was "in accordance with the terms and intent of testator's will as expressed in the third paragraph thereof," and judgment was entered accordingly. Mr. Watson appeals from the judgment.

1. In construing the will, the circumstances existing when it was made should be taken into account. The testator had no wife and no grand-

children. He made his will in contemplation of early death. He could hardly have anticipated the birth of grandchildren before his death. It seems reasonable to suppose that, in referring to his children's children and to descendants of a deceased child, he meant any of their children who might be born either before or after his own death. It does not seem reasonable to suppose that he was merely providing for the improbable contingency of the death prior to his own death, of one of his children who should leave a surviving child. If he used the words "descendants of a deceased child" in the sense attributed to them by appellant, he accomplished nothing, for the statutes of most states provide that a legacy to a child, who dies before the testator but leaves issue who survive testator, shall go to such issue, unless a different disposition be made by the will. 40 Cyc. 1515. Such is the law of this state and of Pennsylvania, the state of testator's residence. Heffelfinger v. Appleton, 144 Minn. 208, 175 N. W. 105; Bradley's Estate, 166 Pa. 300, 31 Atl. 96. The testator had in mind only his children and their children in selecting the objects of his bounty, for no other class of beneficiaries is mentioned. It does not appear that there was anything in his relations with his two sons-in-law which might lead him to wish to give them the same standing as the living issue of a deceased child. Mr. Watson did not come into the family until nearly four years after the testator's death. In this respect the facts are quite unlike those in Heffelfinger v. Appleton, supra. There is no direct bequest of a share in the residue of the estate to any of the children. Aside from a legacy of $10,000 to each, they are to receive nothing, except through the intervention of the trustee, in whom possession and control of the estate is vested for definite periods of time. At the expiration of those periods the trustee is to divide the fund among and pay it to persons not mentioned by name but designated as the members of a class. The vital question is, who is to be included in ascertaining the membership of the class? When the second division and distribution is made, it is to be made among the testator's children or their descendants living at that time. It is clear that Mr. Watson is not included if we consider this clause of the will standing alone. The first division and distribution is to be made among all of testator's children or the descendants of a deceased child or children. Mr. Watson can only be included on the theory that by "all my children," the testator meant that

the share of a deceased child who had left no issue should go to the persons entitled by the intestate laws or by testamentary disposition to receive the estate of the deceased child. This construction would lead to a different disposition of the two moieties of the estate, so that Mr. Watson would share in one but not in the other. It is fair to assume that testator's intention was the same as respects both moieties, and that he did not intend that a person could enter by marriage the class to whom distribution was to be made. It is the common desire of men to favor their own kin with their bounty rather than permit their property to be diverted to strangers to their blood or affections. In re Oertle, 34 Minn. 173, 24 N. W. 924, 57 Am. Rep. 48; Heffelfinger v. Appleton, supra.

Whether the children living at the time of testator's death acquired a vested interest in the estate is an important but not a controlling question in the case, for the testator may have entertained a different purpose regarding the distribution of the income and the distribution of the corpus of the estate. It is to be noted that only the income and its distribution is involved in the present litigation, hence inquiry as to the rights of the parties in the fund from which the income is derived is really collateral to the question to be decided. The income is to be divided among all the children living at the time of testator's death, or if any should die, then to their children. The will does not provide that the income shall belong absolutely to the legatees, and in this respect it differs from the will construed in Held v. Keller, 135 Minn. 192, 160 N. W. 487. No time for the division and payment of the income is specified. It appears, however, that it has been divided and paid over at regular intervals and that no one has questioned the propriety of the trustee's acts in this respect.

If this clause of the will is read alone, it furnishes a substantial basis for the contention that each child acquired a vested interest in the income at the instant of their father's death. But a will is to be read as a whole and the testator's intention gathered from everything contained within its four corners. In re Swenson's Estate, 55 Minn. 300, 56 N. W. 1115; Yates v. Shern, 84 Minn. 161, 86 N. W. 1004; Johrden v. Pond, 126 Minn. 247, 148 N. W. 112. When read as a whole, it appears to have been the predominant thought in the testator's mind and his clear purpose to confine his bounty to his lineal descendants. He has made blood

relationship the test for the determination of the right of a claimant to share in his estate. It is to be noted moreover that there is no gift in the will except by way of a direction to the trustee to divide and pay at future times. The enjoyment of the gift is postponed. As expressed in some of the decisions, time is annexed to the substance of the gift as a condition precedent. In such cases the general rule is that the legacy does not vest until the time for payment arrives. Savela v. Erickson, 138 Minn. 93, 163 N. W. 1029; Rosengarten v. Ashton, 228 Pa. 389, 77 Atl. 562; Rudd v. Cornell, 171 N. Y. 114, 63 N. E. 823; Crapo v. Price, 190 Mass. 317, 76 N. E. 1043.

We have not overlooked the numerous cases which hold that, as a general rule, the members of a class for whom a legacy is provided are to be ascertained upon the death of the testator, since a will is presumed to speak as of that day, nor the rule that the law favors the early vesting of legacies. It is not necessary to go beyond our own decisions for authority upon these two propositions. Yates v. Shern, supra; Savela v. Erickson, supra; Barney v. May, 135 Minn. 299, 160 N. W. 790; Heffelfinger v. Appleton, 144 Minn. 208, 175 N. W. 105. These rules, like all others, have their limitations. They are not to be permitted to defeat the scheme of a will as disclosed by its wording as a whole. "The sole province of the court in all such cases, where the terms of the will are in doubt, is to ascertain and give effect to the intention of the testator. When such intention is found from the will, taken in all its parts, it is conclusive." Elberg v. Elberg, 132 Minn. 15, 155 N. W. 751.

The briefs refer to many recognized rules for the construction of wills. To apply all of them would reduce testator's will to a combination of hopelessly inconsistent clauses, one destroying the effect of another. A will should not be approached with the mind fixed on the canons of construction. They are merely aids to the court in resolving doubts arising from obscurity in the language of the will. To read a will with an eye upon decisions in cases involving other wills may suggest doubts and obscurities where none would otherwise have appeared.

We think there can be no reasonable doubt of the testator's intention to limit his bounty to his descendants, to the exclusion of strangers to his blood.

2. The contention that the trust created by the will is invalid, if the

construction of the district court is adopted, is not sustained. The entire estate consists of personalty, which the trustee is to take charge of and invest. A trust to invest funds for the benefit of a class, as provided by subdivision 5, § 6710, G. S. 1913, is not invalid because it may suspend the power of alienation beyond the period fixed by statute, where personal property is the subject of the trust. Y. M. C. A. v. Horn, 120 Minn. 404, 139 N. W. 806; Minn. Loan & Trust Co. v. Douglas, 135 Minn. 413, 161 N. W. 158. An interesting criticism of the Horn case was made by Professor Thurston in 1 Minn. Law Rev. 226–229, where its apparent conflict with the doctrine of other decisions is pointed out.

3. The failure to provide that on the death of a child the surviving children shall succeed to his or her share in the estate does not defeat their claim to such share. A will is not to be construed by giving an arbitrary effect to the presence or absence of a particular word or phrase. Johrden v. Pond, supra. It is characteristic of a class legacy that, on the death of a member of the class, the survivors succeed to his interest in the legacy, even though the testator has not specifically directed that they should take the share of the deceased member of the class. Swallow v. Swallow, 166 Mass. 241, 44 N. E. 132; Brewster v. Mack, 69 N. H. 52, 44 Atl. 811; Saunders v. Saunders' Admrs. 109 Va. 191, 63 S. E. 410; 2 Jarman, Wills, 1787; Page, Wills, § 550.

We conclude that the learned trial court placed the correct construction upon testator's will and its judgment is accordingly affirmed.