CONGDON v. COMMISSIONER OF INTERNAL REVENUE.
No. 11207.

Circuit Court of Appeals, Eighth Circuit.
Nov. 3, 1938.

Rollo F. Hunt and A. L. Agatin, both of Duluth, Minn. (Hunt & Palmer, of Duluth, Minn., on the brief), for petitioner.

S. Dee Hanson, Sp. Asst. to the Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Mr. Norman D. Keller, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before SANBORN, THOMAS, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

This is a petition to review an order of the Board of Tax Appeals redetermining an alleged deficiency in the income taxes of Clara B. Congdon for the year 1931. The sole question presented is whether $16,386.90, received in 1931 by Mrs. Congdon from the testamentary trustees of the estate of her deceased husband, Chester A. Congdon, was taxable to her as income. The Commissioner determined that it was taxable, and, upon review, the Board of Tax Appeals reached the same conclusion.

The facts are not in dispute, and it is conceded that if, under the terms of Mr. Congdon's will, the payment in question was on account of a sum certain payable at all events to Mrs. Congdon during each year of her life, it was not income taxable to her, but was a bequest and exempt under § 22(b) (3) of the Revenue Act of 1928 (c. 852, 45 Stat. 791, 797, 798, 26 U. S.C.A. § 22(b) (3), which, so far as pertinent, provides:

"§ 22. Gross income.

\*       \*       \*       \*       \*       \*

"(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this title:

\*       \*       \*       \*       \*       \*

"(3) Gifts, Bequests and Devises. The value of property acquired by gift, bequest, devise, or inheritance \*   \*   \*."

It is likewise conceded that if this payment was one which the trustees, by the terms of the will, were authorized to make only from the income of the estate, it was taxable to Mrs. Congdon as a beneficiary of the trust. See Burnet v. Whitehouse, 283 U.S. 148, 51 S.Ct. 374, 75 L.Ed. 916, 73 A.L.R. 1534; Helvering v. Butterworth, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365; Helvering v. Pardee, 290 U.S. 365, 54 S. Ct. 221, 78 L.Ed. 365; Bush v. Commissioner, 9 Cir., 89 F.2d 596.

Chester A. Congdon, a resident of Duluth, Minnesota, whose homestead consisted of a large estate known as Glensheen, in that city, made his will in April, 1913, and died in 1916, leaving Mrs. Congdon and six children surviving. His will, which covers some fifteen pages of the printed record, need not be set forth in full in this opinion, although, as is conceded, his intention with respect to the nature and source of the payment to Mrs. Congdon here in question must be ascertained from a consideration of the entire instrument viewed in the light of the circumstances existing when it was executed and giving to its language the ordinary meaning which such language imports. In re Charles A. Swenson's Estate, 55 Minn. 300, 308, 56 N.W. 1115, 1116; Wheaton v. Pope, 91 Minn. 299, 306, 97 N.W. 1046, 1048; Elberg v. Elberg, 132 Minn. 15, 17, 155 N.W. 751; Barney v. May, 135 Minn. 299, 301, 160 N.W. 790, 791; Anderson v. Brower, 148 Minn. 44, 47, 180 N.W. 1019, 1020; In re Freeman's Estate, Buck v. Huntley, 151 Minn. 446, 449, 187 N.W. 411, 412; In re Trust Under Will of L. H. Bell, 147 Minn. 62, 67, 179 N.W. 650, 652.

Mr. Congdon's will discloses that he was a man of large means, from which he derived a large income. His family consisted of his wife, three sons and three daughters. Four of his children were of age; one son and one daughter were minors. It is apparent that by his will he was endeavoring to insure, so far as was humanly possible, that after his death each member of his family should have adequate means of support and that the family homestead should be maintained as a permanent home to which the members of the family might resort so long as any of them lived. To this end he gave Glensheen with all of its contents to Mrs. Congdon for life, and upon her death to the trustees named in his will to be held in accordance with certain trusts specified in the will until all of his children had died. He also provided that, upon the death of the last survivor of his family, the fee title to Glensheen should vest in the oldest son or grandson of the eldest of the testator's sons, or, if there were none, in the lawful descendants of his children per stirpes.

By his will, the testator first bequeathed $25,000 to Mrs. Congdon, to be paid to her by his executors upon their qualification. He next gave to Mrs. Congdon Glensheen and directed his trustees, during her life, to maintain Glensheen in a good state of repair and pay taxes, assessments and insurance thereon as a part of the current expenses of the trust estate, and

to pay to Mrs. Congdon, "to defray the running expenses of Glensheen", the sum of $25,000 per annum in quarterly instalments. The exact language of this provision of his will is as follows: "During the life of my wife my said trustees shall maintain Glensheen in a good state of repair, and pay taxes, assessments and insurance thereon, as a part of the current expenses of my estate, and shall pay to my wife to defray the running expenses of Glensheen the sum of twenty-five thousand dollars per annum, in quarterly installments."

The testator provided, in the third article of his will, for the continued maintenance of Glensheen by his trustees after the death of Mrs. Congdon, as follows:

"During the period in which said property is held in trust, the expenses of repairs, taxes, assessments and insurance shall be similarly defrayed, and the same allowance or appropriation made for running expenses, which latter fund shall be directly applied by the trustees to defray the running expenses of Glensheen except as a majority of my surviving children may from time to time agree upon one or more of their number residing in Glensheen to whom such current expense fund shall be paid, and who shall take charge of its application, in which case such payments shall be made to such person or persons, whose receipts for the same shall absolve the trustees from further reponsibility therefor.

"Subject only to the rights of sale and conveyance above provided for, it is my desire and direction, that so long as any of my children shall live, Glensheen shall be thus kept open by the trustees for the equal use of such of my children and their families, if any there be, as may at any time wish to either live in it, or revisit it as they would be free to do were my wife and I still surviving."

At the end of the third article, he stated: "All payments under this article shall be made in full in preference to any other hereinafter provided for."

It is to be noted that in the third article, dealing with the maintenance and disposition of Glensheen, there is no language providing or suggesting that the $25,000 allowance to be made to Mrs. Congdon during her lifetime for running expenses is to be paid only out of income of the trust estate.

In the fourth article of his will, the testator devised the residue of his estate to his trustees and the survivors or the survivor of them, to be held by them during the lives of his six children and for three years after the death of the longest surviving child; giving directions to them with respect to holding and managing the trust estate and collecting rents and profits.

In the fifth article of his will, the testator provided for the payment of his debts and funeral expenses by his trustees from the income of the trust properties.

In the sixth article, the testator provided:

"From the net income of said trust properties devised and bequeathed in Article Four, I direct my said trustees to make the following payments or distributions, to-wit:

"1st The payments directed by the third article hereof, which shall be made in full in preference to any other hereinafter provided for.

"2nd [The testator here made provision for annuities or allowances to each of his six children upon a graduated upward scale depending on age, beginning with $1200 for ages under twenty-one, and ending with $20,000 annually for each child after arriving at the age of forty-five.]

"3rd To my wife's nephew, Alfred E. Bannister, so long as he shall live, twenty-five hundred dollars, annually.

"4th To my sister, Laura C. Hebard, so long as she shall live, twelve hundred dollars annually.

"The payments made under this sixth article shall be made quarter yearly if not detrimental to the trust estate, and at all events semiannually."

In the seventh article the testator directed that until one of his children should become forty-five years of age, one-third of the entire net income from the personal property of the trust estate should be accumulated and reinvested as principal, and that, if the amount available for distribution as income (two-thirds of the net income from personal property) should exceed the aggregate of the payments to be made to the beneficiaries, such surplus should be paid to the testator's wife and children in proportion to the fixed sums provided for each of them for such year; and further provided:

"In determining the sums payable in any year to my wife and children for the purpose of distributing said surplus income there shall be included the twenty-five thousand dollars annually paid my wife for the running expenses of Glensheen, but the sums paid any of my children for said running expenses shall be excluded.

"To avoid misunderstanding I declare that my wife is not obligated to devote all or any part of the twenty-five thousand dollars annually paid her, to the running expenses of Glensheen, but she may dispose of such money in any way she deems best.

"No part of said surplus income shall accrue to the beneficiaries named in the third and fourth subdivisions of the sixth article.

"The foregoing directions for the distribution of said surplus income are subject to the further condition that no part of any such surplus annual income shall be paid to any child until he or she shall reach the age of thirty-five years. Any portion of any such surplus annual income accruing as aforesaid to any child under the age of thirty-five years, shall be invested by my said trustees for the benefit of each such child, and when any such child shall reach the age of thirty-five years said trustees shall either convert such investments into money and pay the same over to such child, or, in their discretion, duly transfer all such investments to such child.

"In case the amount available in any year for distribution by the trustees as income, shall be less than the aggregate of the fixed sums for the payment of which provision has hereinbefore been made, the deficiency shall be payable out of that part of the net income which would otherwise be set aside for reinvestment as principal; and if the whole of the net income shall be inadequate, then the several payments provided for by subdivisions second, third, and fourth of the sixth article hereof shall abate proportionately.

\*　　\*　　\*　　\*　　\*　　\*

"All the payments of money hereinbefore provided for or directed to be made by my said trustees (except the payments for the maintenance of Glensheen, and the running expenses thereof) are designed to secure adequate support from year to year to the several beneficiaries of such payments, \* \* \*."

In the ninth article of his will, the testator directed that rents and royalties from mines and dividends from mining stock shall be deemed income, although in fact principal, and cautioned his children that "if this trust should last for many years, the income therefrom during the latter part of the trust period, may not be as large as it was during the early part of such period." He admonished his children as follows:

"My children should remember that because they are from year to year largely consuming the principal of my estate, though calling it income, there will not be at the termination of the trust period so large a principal to distribute among their children as the annual income under this will might lead a careless mind to expect. Therefore it behooves them to severally provide for their own children during their respective lives.

"My children should not assume that they will annually receive the sums named in the sixth and seventh articles hereof. Those articles, when read with the rest of the will, simply determine the proportion of the income from my estate which will be paid to each of them during any year.

"It is possible that my children will never receive in any year payments as large as I have directed my trustees to make them. Some years they will probably receive no such payments. It is because of such uncertainty that I have endeavored to provide a home for all of them in Glensheen."

In the eleventh article, the testator further provided: "I direct that each of my trustees except my wife (who shall receive nothing because she will not need it) shall, in lieu of all lawful fees, receive five thousand dollars annually in full compensation for his or her services as trustee hereunder, which shall be in addition to any and every bequest or devise or payment directed herein to be made; \* \* \*."

In the thirteenth article, the testator provided that his trustees during their holding of Glensheen (after Mrs. Congdon's death) are empowered to lease it with the concurrence of the surviving children, and that while any such lease is in force, the trustees shall not pay the $25,000 annually for running expenses, but shall defray the expenses of repairs, taxes, assessments, and insurance.

In the fourteenth article, the testator stated: "The object of my efforts and of this will, has been to provide and maintain for my wife and children, a home, so long as any of them shall live."

Mrs. Congdon consented in writing to the disposition of her husband's estate as provided in his will, and thereby waived her statutory interest in his estate. The will was admitted to probate in the Probate Court of St. Louis County, Minnesota, on January 2, 1917. The final decree of distribution of the estate, in accordance with the terms of the will, was entered on December 3, 1917. The payment of the $16,386.90, the taxability of which is in controversy, was made by the trustees to Mrs. Congdon in 1931 as a part of the $25,000 annuity for the running expenses of Glensheen, in accordance with the provisions of the will. It was stipulated that the trustees did not claim any credit, in making their return of income of the trust estate for the year 1931, for the payment of the $16,386.90 made to Mrs. Congdon, nor did they deduct such payment from the reported income of the trust estate.

The grounds upon which the Commissioner determined that the $16,386.90 was taxable to Mrs. Congdon, as shown by the deficiency notice, were as follows: "The income of $16,386.90, received from the Congdon Trust, is taxable to you as beneficiary in accordance with the decision of the Supreme Court of the United States in the case of Julia Butterworth et al., in which it is held that where a widow accepts the provision of her husband's will and receives part or all of the income from an established trust in lieu of her statutory rights, she does not become the purchaser of an annuity, but is a beneficiary of the trust within the meaning of sections 161 and 162 of the Revenue Act of 1928 [26 U.S.C.A. §§ 161, 162]."

Upon review, the Board of Tax Appeals stated its conclusion as follows:

"In this case the will which directed the payment to petitioner by the trustees also directed the payment to be made out of net income. Only the testator's debts were directed by him to be paid, if necessary, out of principal forming the corpus of the trust. If the income of the trust available for distribution should be insufficient for the payment of the fixed sums provided for by the will, then it was provided that the deficiency should be payable out of that part of the net income which would otherwise be set aside for reinvestment as principal, and if the whole of the net income should be inadequate, then payments provided for other than the one in question in this case should [abate] proportionately.

"In view of these provisions of the will of petitioner's deceased husband pursuant to which the payment herein involved was made, we must conclude that the testator intended such payment to be made only from net income. Therefore, petitioner received such payment as beneficiary and it is taxable to her as income."

Taking the will as a whole, does it show that the intention of the testator was that the $25,000 annuity payable to Mrs. Congdon for the purpose of enabling her to maintain Glensheen as a home for herself and her children, should be paid only from the income of the trust estate?

It seems reasonable to assume that if Mr. Congdon had intended that Mrs. Congdon should be paid the $25,000 annuity only out of the income of the trust estate, he would have so expressly provided. It is certain that he intended that during Mrs. Congdon's lifetime and thereafter, Glensheen should be maintained as a home for the family. That being so, we think that all of the provisions of the will should be so construed as to effect that intent, unless a different construction is compelled by the language used. It is, of course, apparent that taxes, assessments, insurance, and repairs, which were to be paid for by the trustees as a part of the current expenses of the trust, were to be paid without regard to income. As already mentioned, there is no intimation in the third article of the will that the annuity of $25,000 to be paid to Mrs. Congdon should be paid only out of income. Were it not for the sixth article, which directs the trustees to make this payment out of net income, there would be no basis whatever for any suggestion that it was the intent of the testator that it should be paid only from that source.

We think there is no actual inconsistency between the unqualified direction to pay Mrs. Congdon $25,000 annually, contained in the third article, and the direction in the sixth article to make the payment out of income. It seems clear to us that, in the sixth and seventh articles of the will, the testator was concerned primarily with fixing the allowances for his children and providing the source and the

method of payment, and the means for ascertaining the amount of surplus income from his estate which should be distributable in any year. His direction was that the trustees were to pay from net income the $25,000 annuity to Mrs. Congdon, and that the balance, only, was to be available for the payment of the childrens' allowances and for distribution. If the income over and above the $25,000 was insufficient to pay to the children the allowances provided for them in full, then it was provided that their allowances should abate proportionately. We find no direction or suggestion in the will that the $25,000 annuity to Mrs. Congdon should abate or should be withheld if the net income of the trust was insufficient or was nonexistent. Mr. Congdon realized that there might be times when his children would receive nothing under the provisions of the will, because he pointed that out to them in plain language and stated that that was why he was providing a home for all of them. If it was intended that the annuity provided for Mrs. Congdon to enable her to maintain the home, was to be withheld during the years when there was no net income from the estate, then there was no assurance to her or to the children that the home would be maintained. The only assurance would be that the home would not be lost to them on account of deterioration or the nonpayment of taxes, assessments or insurance. The provision that, in order to prevent misunderstanding, Mrs. Congdon should not be obligated to use the annuity for the running expenses of Glensheen, was intended, we think, to relieve her from accounting to the trustees for her use of the annuity, and to leave her free to use her own discretion as to its expenditure.

The fact that the testator provided that the annuity to Mrs. Congdon was to be paid out of income does not negative an intent on his part that it should be paid out of the corpus of the estate if there was no income. See Wheaton v. Woell, 182 Minn. 212, 234 N.W. 14; Mary Ink v. Commissioner, 35 B.T.A. 846. We are convinced that, under the terms of the will, the trustees, if they had withheld from Mrs. Congdon, during any year in which the trust estate failed to produce a net income, the $25,000 which they were directed by the testator to pay to her, would have violated their trust and could have been compelled to pay it to her out of the corpus of the estate. We are, therefore, unable to sustain the conclusion reached by the Commissioner and the Board that the amount paid to her by the trustees in 1931, which is here in dispute, was income taxable to her.

The order of the Board is reversed.