444

## IN RE TRUSTEESHIP UNDER WILL OF WILLIAM TWEEDIE.
## CLIFFORD FAY AND ANOTHER v. MARJORIE WALDIE STRADER.
## FIRST NATIONAL BANK OF MINNEAPOLIS, TRUSTEE.[1]

June 29, 1951.

No. 35,484.

---

[1]Reported in 48 N. W. (2d) 657.

George A. Lewis, for appellants.

R. Edison Barr, for respondent Marjorie Waldie Strader.

Dorsey, Colman, Barker, Scott & Barber and David R. Brink, for respondent First National Bank of Minneapolis.

KNUTSON, JUSTICE.

This is an appeal from a judgment and decree of the district court of Hennepin county construing a testamentary trust created under and by the last will and testament of William Tweedie, deceased. The will is dated January 4, 1921.

After providing for the payment of debts allowed in the due course of administration in Article I of the will, and bequeathing to his wife all household goods, books, apparel, jewelry, and other like contents of their place of abode by Article II, Article III reads as follows:

"I give and bequeath to my grandson, WILLIAM LEITZ GRAHAM,[2] any debt due me from him at the time of my decease, in this manner forgiving the debt as a legacy to him."

Testator then disposed of the residue of his estate by Article IV, which so far as here material reads:

"All the rest, residue, and remainder of my estate of whatever nature and wheresoever situate, I give, devise, and bequeath to my TRUSTEE hereinafter named, in trust for the following uses and purposes:

"First: To pay the net income therefrom to my wife, MARJORIE W. TWEEDIE, in convenient installments for the term of her natural life.

---

[2]William Leitz Graham is the son of testator's daughter Euphemia G. Graham.

"Second: Upon her decease the then trust fund shall be divided into three equal parts. One of said parts shall be paid over discharged from this trust to my daughter MARY WHITEHEAD FAY, now residing at Minneapolis, Minnesota. One of said parts shall be paid over discharged from this trust to my daughter, MARJORIE WALDIE STRADER, now residing at St. Paul, Minnesota. One of said parts shall continue to be held by the TRUSTEE in trust and the net income therefrom paid to my daughter, EUPHEMIA G. GRAHAM, now residing at Staples, Minnesota, for the term of her natural life, and upon her decease the share of principal of said part shall be paid in equal proportions to my other two daughters, namely, MARY WHITEHEAD FAY and MARJORIE WALDIE STRADER, or all to the survivor thereof, if only one of them is then living.

"Third: The surviving children of any deceased daughter of mine shall take the same share of principal their deceased mother would have taken if living and at the same time. Should any daughter of mine who is entitled to any principal hereunder leave no surviving issue then the share of principal that would be payable hereunder to such daughter, if living, shall be added to the share or shares of the surviving daughters, but under the terms and provisions of this trust."

Subsequent to the death of testator, the trust created by Article IV was duly established by court order. First National Bank of Minneapolis was appointed trustee. Testator's wife, Marjorie W. Tweedie, died August 23, 1929. Thereafter, the trust created for the benefit of testator's daughter Euphemia G. Graham was established, the corpus thereof comprising one-third of the assets of the former trust. The remaining two-thirds was distributed to testator's two other daughters, Mary Whitehead Fay and Marjorie Waldie Strader, in equal shares, pursuant to the provisions of the will.

Mary Whitehead Fay died May 20, 1946, leaving her surviving two children, Clifford Fay and Carlyle Fay, appellants here. Euphemia G. Graham died intestate August 28, 1950, and left her surviving her husband, George, and her son, William. They received the income which had accumulated prior to Euphemia's death.

A question having arisen as to the final distribution of the principal of the trust created for Euphemia, the trustee petitioned the district court for instructions as to the proper interpretation of Article IV of the will. The question raised is whether the entire remaining assets of the later trust should go to the surviving daughter, Marjorie, or whether they are distributable one-half to Marjorie and one-half to the children of Mary, the daughter of testator who had predeceased Euphemia.

At the hearing, over objection, there was received in evidence a letter written by testator to his wife, bearing date July 11, 1921, which was found with the will and which so far as here material reads:

"St. Paul, Minn.
July 11th/21

"Dear Madge:

"You will see that I have put our estate into the Wells Dickey Com'y Trust, to handle for you. * * * You will see by the Will that I have left our estate to the Girls, share and share alike, with this exception, that the income be divided to them, during Phemias's lifetime and at her death her share will go to Mary or Madge *or their families*. But if Willie Leitz or Graham should die before Phemia, then the estate would be divided share and share alike* *Note* but no part of my money is to go to Willie or any Leitz. This I hope you will see to as long as you live. * * *

"*Note* and the Trust discontinued." (Italics supplied, except the word "Note.")

It is the contention of Marjorie, respondent here, that paragraph Third of Article IV applies only to the share of the original trust which was distributable to testator's daughters Mary and Marjorie upon the death of testator's wife, and that it has no application to the trust distributable upon the death of Euphemia. Respondent contends that the last provision of paragraph Second of Article IV, which reads, "upon her [Euphemia's] decease the share of principal of said part shall be paid in equal proportions to my other

two daughters, namely Mary Whitehead Fay and Marjorie Waldie Strader, or all to the survivor thereof, if only one of them is then living," is controlling without reference to paragraph Third. The trial court so construed the will, and this appeal is from the decree of the trial court so holding.

In construing a will, the cardinal purpose is to ascertain the intention of the testator. In re Estate of Hasey, 192 Minn. 582, 257 N. W. 498; In re Estate of Sherk, 191 Minn. 143, 253 N. W. 365. In determining the testator's intention, we must ascertain, if we can, what he had in mind at the time he made the will. Atwater v. Russell, 49 Minn. 22, 51 N. W. 624.

The will must be construed as a whole. In re Trust Under Will of Bell, 147 Minn. 62, 179 N. W. 650.

Another well-established rule of construction is that a will should be so construed as to avoid a partial intestacy. The fact of making a will raises a strong presumption against a partial intestacy. In the Atwater case we said (49 Minn. 51, 51 N. W. 627):

"The intention of the testator, as shown by the will, was beyond question to dispose of all his estate; to die intestate as to none of it; to leave none of it to go to his heirs or next of kin by the law of descent or distribution. * * * In such cases courts will not hold that a testator died intestate as to any part of his estate, unless driven to the conclusion that he has done so in spite of his intention to the contrary."

See, also, Greenman v. McVey, 126 Minn. 21, 147 N. W. 812; In re Henrikson's Estate, 163 Minn. 176, 203 N. W. 778; 6 Dunnell, Dig. & Supp. § 10259a; Dunnell, Minnesota Probate Law, § 325.

In the application of this rule, we must view the case as of the date of the making of the will and determine if, at that time, one construction would permit a partial intestacy and another a complete disposition of the estate and, if so, give to the will such meaning as to avoid a partial intestacy. In this case, it is clear

from the will itself that testator had no intention of permitting a partial intestacy under any circumstances. Article IV provides:

"All the rest, residue, and remainder of my estate of whatever nature and wheresoever situate, I give, devise, and bequeath to my TRUSTEE," etc.

Clearly, it was testator's intention to dispose of all of his estate by his will, no matter which of his children might die first. . . .

It is also obvious from the will that testator had no intention of giving the son of Euphemia any part of his estate. Article III gives to Euphemia's son any debt he might owe testator at the time of testator's decease "as a legacy to him." It is apparent that testator, in forgiving whatever debts Euphemia's son might owe him, felt that that was all he should have.

Paragraph Third of Article IV follows the whole of paragraph Second. Either it applies to the corpus of the trust created for Euphemia, no matter who died first, or it does not apply at all. It would seem reasonable to suppose that if it was intended to apply only to the principal of the trust that was distributable upon the death of the mother it would have been placed in the paragraph immediately following that part of paragraph Second which provides for the distribution of two-thirds of the trust upon the death of the mother, instead of at the end of the entire paragraph.

It is also significant to note the language used in that portion of paragraph Third of Article IV which reads:

"The surviving children of any deceased daughter of mine shall take the same share of principal their deceased mother would have taken if living and *at the same time.*" (Italics supplied.)

In paragraph Second of Article IV, testator, in providing for final disposition of the corpus of the trust created for Euphemia, uses this language:

"* * * upon her [Euphemia's] decease the share of principal * * * shall be paid * * *."

It would seem from the above that it was testator's intention to have paragraph Third apply to the final disposition of all principal and that he considered the corpus of the trust created for Euphemia as principal, as well as the shares of the original trust which were distributed upon the death of his wife.

It is also quite apparent that testator did not treat as a separate trust the *part* of the original trust which upon the death of the mother became a trust for the benefit of Euphemia. He provided that upon the death of the mother two *parts* of the original trust should be paid to the two daughters, and that the third *part* "shall continue to be held by the TRUSTEE in trust," the net income to be paid to Euphemia, and upon her decease "the share of principal of *said part* shall be paid" to the other two daughters. (Italics supplied.) It is quite obvious that testator had no intention of treating the final disposition of one part of his estate in a manner different from another part thereof.

Another and even more convincing circumstance is the fact that, if both Mary and Marjorie had predeceased Euphemia and if we assume that paragraph Third of Article IV does not apply to the distribution upon the death of Euphemia of the principal of the trust created for her, it is apparent that there would have been a partial intestacy, resulting in a distribution according to the laws of descent to the heirs of all three daughters, directly contrary to the evident intention of testator to dispose of his estate without a partial intestacy or to leave any part of it to the heirs of Euphemia. It does not do to say that such a result did not happen. It is enough to say that, viewing the matter from the time of the execution of the will, it could have happened.

If any further proof of testator's intention was necessary, we need only refer to the letter written by testator to his wife shortly after the will was executed. We believe that this letter was properly admitted. Where there is a latent or patent ambiguity in a will as to who is a legatee, evidence dehors the instrument is admissible. In re Henrikson's Estate, 163 Minn. 176, 203 N. W. 778. Reading the will as a whole, it is apparent that there does exist

an ambiguity as to who is to take the share of Euphemia at the time of her death. The letter shows two things to have been definitely intended by testator: (1) That no share of the principal of the trust created for Euphemia should ever go to any of the heirs of Euphemia; and (2) that upon Euphemia's death the principal of the trust created for her benefit should go to the two other daughters, Mary or Marjorie (Madge), *or their families.* When we keep in mind that at the time the will was made there was a possibility that both Mary and Marjorie would die before Euphemia, in which event there would be a partial intestacy, and that Euphemia's heirs would share with those of Mary and Marjorie if paragraph Third of Article IV had no application to this part of the estate, it is at once apparent that such a construction would bring about a result completely contrary to everything which testator sought to accomplish. Looking at the matter from the time of the execution of the will, the corpus of the trust created for Euphemia could only go to Mary or Marjorie or their families, to the exclusion of the son and husband of Euphemia, no matter who died first, if we hold that paragraph Third applies to all of paragraph Second. It seems to us that testator intended that Euphemia's share, upon her death, should go to Mary or Marjorie, or the survivor if one of them were living, with the additional proviso that if one died leaving children such children would take the share of the deceased mother.

Reversed with instructions to proceed in accordance with this opinion.

Reversed.

THOMAS GALLAGHER, JUSTICE (dissenting).

A will must be construed as a whole, the meaning of isolated clauses and paragraphs thereof to be construed by the evident intention of a testator as deduced from consideration of the entire instrument. In re Estate of Hasey, 192 Minn. 582, 257 N. W. 498; In re Trust Under Will of Bell, 147 Minn. 62, 179 N. W. 650; Long v. Willsey, 132 Minn. 316, 156 N. W. 349; Elberg v. Elberg, 132

Minn. 15, 155 N. W. 751. It should be construed to give full effect to each of its parts in harmony with the general intention of the testator disclosed therein. In re Estate of Convey, 177 Minn. 266, 225 N. W. 17; Hutchins v. Wenger, 133 Minn. 188, 158 N. W. 52; Wheaton v. Pope, 91 Minn. 299, 97 N. W. 1046; Redford v. Redford, 45 Minn. 48, 47 N. W. 308; Landis v. Olds, 9 Minn. 79 (90). See, Bedell v. Fradenburgh, 65 Minn. 361, 68 N. W. 41; In re Oertle, 34 Minn. 173, 24 N. W. 924; 30 Am. & Eng. Ency. Law (2 ed.) 664; 40 Cyc. 1413. Its construction must depend upon its language and not upon what it is believed the testator intended or wished to say. In re Estate of Convey, 177 Minn. 266, 225 N. W. 17; Birge v. Nucomb, 93 Conn. 69, 105 A. 335. If the testator's intention, though improperly or poorly expressed, may be gathered *from the instrument as a whole*, such intention must be given effect, and in such event the surrounding circumstances and other extrinsic evidence will bear little weight. 30 Harv. L. Rev. 372.

Applying these rules to the present document, it seems clear from paragraph Second of Article IV that testator had in mind and intended that that portion of his estate placed in trust for his daughter Euphemia G. Graham should, upon her decease, go to his "other two daughters, namely, MARY WHITEHEAD FAY and MARJORIE WALDIE STRADER, or all to the survivor thereof, if only one of them is then living." It is also clear from Article III of the will above referred to that when testator expressed this intention he had in mind that Euphemia had a son, who no doubt would survive her, thereby manifesting his intention that this portion of his estate was not to descend in the same manner or to be governed by the clauses applicable to the remaining two-thirds thereof left outright to his daughters Mary Whitehead Fay and Marjorie Waldie Strader. This being true, it would seem that the more general provisions of paragraph Third of Article IV must yield to the specific intention of the testator expressed in paragraph Second of this article; that paragraph Third would be applicable only to the portions of testator's estate which were to be distributed outright to his daughters Mary Whitehead Fay and Marjorie Waldie Strader at the time of the

death of his wife, Marjorie W. Tweedie. Had testator intended that the surviving children of Mary Whitehead Fay should take that portion of the principal of the Euphemia G. Graham trust which their mother would have taken if living, he would not have inserted in paragraph Second the provision "or *all* to the survivor thereof, if only *one* of them is then living." (Italics supplied.)